ELSA S. BURROWS, joined by her husband, WATERS F. BURROWS,
v. CHARLIE HAGERMAN, as Tax Collector of Sarasota County,
et al.

33 So. (2nd) 34
December 12, 1947

June Term, 1947
En Banc

*Clyde H. Wilson,* for appellants.

*Lewis H. Tribble* and *Walton, Hubbard, Schroeder, Lantaff & Atkins* and *S. O. Carson,* for appellees.

SEBRING, J.:

Elsa S. Burrows and Waters F. Burrows, her husband, have filed their second amended bill of complaint in the Circuit Court of Sarasota County, in which they allege, in substance, that they are residents of Sarasota County; that each of them is a beneficiary under separate trust instruments executed in the State of New York under which the trust property is held and managed in New York State, by New York corporate trustees; that the plaintiffs contend that they are not required by law to make tax returns on said property interests, or to pay taxes in Florida on said interests, for the reason that since property interests do not constitute intangible personal property held, owned, nanaged or controlled by plaintiffs "in this State;" that, despite their contentions, the tax collector of Sarasota County is attempting to collect taxes, interest and penalties assessed for the years 1935 to 1942, inclusive, upon said property interests; that the plaintiffs are not required to pay taxes on such beneficial interests but, even if they were, the assessments on which the taxes are based are void and unenforceable, because they are made in the name of "Walter Burrows and wife," and not in the names "Waters F. Burrows" and "Elsa S. Burrows."

The bill also alleges that the tax collector of the county is attempting to collect intangible personal property taxes against the plaintiff Elsa S. Burrows, for the year 1943, and back assessments on the 1943 tax roll for the years 1940, 1941 and 1942, because of her alleged taxable interests under two of the trust instruments described in the bill of complaint, but that the assessments are void and unenforceable because made by the tax assessor under the mandatory direction of the State Comptroller who allowed to the tax assessor "no discretion in the matter and thereby usurped the duties of the aforesaid tax

assessor." Other matters are also alleged, which the plaintiffs charge void this assessment.

The bill alleges, further, that these void and unenforceable assessments constitute a cloud on the title to various parcels of real estate in Sarasota County owned by the plaintiffs; that the plaintiffs are owners by the entireties of an undivided one-half interest in and to certain lands lying and being in Sarasota County, said interest being owned by them as "Waters F. Burrows and Elsa S. Burrows, husband and wife"; that the plaintiffs have a purchaser for the property who refuses to accept title unless the taxes are paid or are declared by a court of competent jurisdiction not to constitute a charge or lien against the lands held by the plaintiffs as an estate by the entireties.

In the prayer of the bill of complaint the plaintiffs ask that the court take jurisdiction of the cause and the subject matter and inquire into and determine the legality and validity of the tax assessments, and as to whether or not the plaintiffs, or either of them, are liable for the payment of said assessments; that a declaratory judgment be entered declaring whether or not the lands owned by entireties are liable and subject to any legal liability, liens or otherwise, as a result of the tax assessments; whether the intangible tax assessments against "Walter Burrows and wife" constitute any legal liability as against the plaintiffs, Waters F. Burrows and his wife, Elsa S. Burrows, or either of them, and, in event taxes are due under the assessments, then for what percentage of the assessments each of the plaintiffs is liable; whether the trusts set out in the bill of complaint are taxable under the intangible tax laws of the State of Florida; and for other relief.

A motion to dismiss the bill of complaint was filed by the defendants. Upon a hearing the motion to dismiss was granted and the bill of complaint was dismissed. The plaintiffs have taken an appeal from that order.

It is our view that the chancellor acted correctly in sustaining the motion to dismiss the bill of complaint as to the separate tax assessment made against the plaintiff Elsa S. Burrows. It may well be, as alleged in the bill of complaint,

that the Comptroller of the State of Florida did mandatorily direct the tax assessor of the County to assess and back-assess the intangible personal property of said plaintiff, and allowed to the assesssor "no discretion in the matter"; but it does not necessarily follow from this that the assessment and back assessments so made, were not in fact based upon a fair and just valuation of the property interest involved. This ground, therefore, is without merit. Other grounds alleged by the plaintiff for voiding the assessment and back assessments have been considered, and we find them likewise to be without merit.

As to the assessments made jointly against both plaintiffs, the bill of complaint reveals the following information:

The first trust instrument described in the bill of complaint was executed in New York on 10 August, 1935, between the plaintiff, Elsa S. Burrows, as donor, and the plaintiff, Waters F. Burrows, and the Fiduciary Trust Company of New York, as joint trustees. Under the instrument the donor irrevocably assigns, transfers and delivers to the trustees certain property to be held, managed and disposed of by them, with directions that: "The entire net income from the trust fund shall be paid to Waters F. Burrows so long as he shall live. . . . From and after the death of said Waters F. Burrows, the entire net income shall be paid to Elsa Burrows, daughter of the Donor, so long as she shall live."

The trust instrument provides that "upon the death of the survivor of said Waters F. Burrows and Elsa Anna Burrows, the then principal of the trust fund shall be paid over and delivered to and among the issue, parents or spouse of such survivor, and in such manner as such survivor may by his or her last will and testament designate and appoint." The trust instrument also provides "all payments of income shall be made periodically and as frequently as may be convenient and in any event not less often than quarterly." It provides further: "It being the intention that the Trustees shall be free to make distributions of principal in advance of the time hereinabove specified if they shall deem such action advisable by reason of any emergency or by reason of any change of

circumstances, the Trustees are therefore authorized, at such time or times and for such reason as they deem proper and sufficient in their absolute discretion, to pay over the whole or any part of the principal discharged of any trust, to the beneficiary entitled at the time of such payment to the current income of the property so paid over."

The second trust instrument described in the bill was executed in New York on 10 February, 1930, between the plaintiff, Elsa S. Burrows, as grantor, and the plaintiffs, Waters F. Burrows and Elsa S. Burrows, as individual trustees, and Central Hanover Bank and Trust Company, a New York corporation, as corporate trustee. Under this instrument the grantor directs the trustees to "pay the net income thereof in equal monthly installments to Waters F. Burrows, the husband of the grantor during the term of his natural life. Upon the death of said Waters F. Burrows, to apply the net income thereof to the maintenance, support and education of Elsa Anna Burrows, daughter of the grantor, during her minority, and to accumulate the balance of said income and to pay the same to the said daughter of the grantor, when she shall have reached the age of twenty-one years; thereafter to pay the net income in equal monthly installments to the said Elsa Anna Burrows during her natural life, and upon her death to pay over and distribute the principal thereof to and among such persons and/or corporations and in such manner as said Elsa Anna Burrows may by her last Will and Testament designate and appoint . . . "

The trust instrument also contains the following provisions:

"The Trustees shall have the following rights and powers. . .

"(b) Upon written request, to pay over or apply, from time to time, to the use of any beneficiary of the trust hereby created, any portion of the principal of the trust estate which the Trustees in their uncontrolled discretion may deem necessary, in case of the insufficiency of income to supply the needs of such beneficiary; . . . "

" (p) In the event of any difference of opinion or disagreement between the Trustees as to the administration of the trusts hereby created, the decision of the individual Trustees delivered in writing to the Corporate Trustee shall be controlling; ... "

"Waters F. Burrows is hereby given power, at any time during his life, to revoke, alter or amend this deed of trust or any term or provision thereof, except that he shall have no power to alter or diminish the compensation of the Corporate Trustee. The Corporate Trustee shall, upon the written request of Waters F. Burrows, transfer, assign and pay over to him any part of the trust property ... "

The third trust instrument involved in this controversy was also executed on 10 February, 1930, in the State of New York. In this instrument the plaintiff, Waters F. Burrows, is named as the grantor, he and his wife, Elsa S. Burrows are named as individual trustees, and Central Hanover Bank and Trust Company is designated as the corporate trustee. The plaintiff, Elsa S. Burrows, is named as beneficiary of the trust instead of the plaintiff, Waters F. Burrows, and, except for this difference, the terms and provisions of this trust instrument are identical with those of the second trust instrument described above.

The fourth trust involved is created by the last will and testament of one Oscar Scherer, the father of the plaintiff, Elsa S. Burrows. The will provides for the residuum of the testator's estate to be held and managed by trustees who shall pay the net income derived therefrom to his widow for life. It provides further:

"Upon the death of my widow, or upon my death should he predecease me, I give and bequeath to the Chatham and Phenix National Bank of the City of New York the sum of one hundred thousand dollars out of my residuary estate, in Trust, however, to invest the same in good and lawful securities, to collect and receive the income and interest therefrom and to pay the same to my daughter, Elsa M. Burrows, semi-annually during her life.

"I hereby authorize and empower my daughter, Elsa M.

Burrows, to dispose of the last mentioned sum of one hundred thousand dollars by her Last will and Testament."

Section 199.07, Florida Statutes, 1941, makes it the duty of "every person, firm or corporation owning or having control, management or custody of intangible personal property in this state which is subject to taxation under the laws of Florida . . . to file a sworn return of the same with the county assessor of taxes in the proper county on or before the first day of April of each and every year . . . " it is admitted by the plaintiffs that they have not filed any returns on the property involved in this controversy. They submit as their reason for not doing so that the trust instruments under which they derive their interests were executed in New York; that the corporate trustees are domiciled in that State; and that the trust property which they are administering is located there. They contend that because of these facts they are not persons "owning or having control, management or custody of intangible personal property *in this State* which is subject to taxation under the laws of Florida."

The contention made by the plaintiffs is not tenable. As to each of the trusts involved, the beneficiary named in the particular trust instruments creating them is the owner of intangible personal property consisting of a vested beneficial right, interest or estate in the trust fund. This right, interest or estate is separate and distinct from the property right owned and held by the trustees in the personal property which comprises the corpus of the trusts. While, perhaps, the legal title to the personal property held by the trustees may be taxed where held and managed by the trustees, the taxing situs of the searate distinct beneficial interests of the beneficiaries in the trust funds is at the domicile of the owners in Florida. See Wood v. Ford, 148 Fla. 66, 3 So. (2nd) 490.

The property interests of the beneficiaries in the present case are quite different from the interests created by the trust instruments before this court in Owens v. Fosdick, 153 Fla. 17, 13 So. (2nd) 700. As was pointed out in Owens v. Fosdick, with reference to the interest of the beneficiary arising from the trust instruments there under consideration: "All that she

has is the prospect or expectation of receiving income in the future, if she be living at the time of the distribution of income, which, practically speaking, amounts to nothing unless and until the income is received. In no event may she have a claim or demand against the trust estate, unless the securities of the estate yield an income. Upon death, the income is no longer a claim against the trustee but passes with the corpus to designated remaindermen. Meanwhile, if the cestui que trust attempts to assign, sell, or encumber her prospects, or permits or suffers the same to be taken by a receiver, trustee, or representative of creditors in any manner, or if legal proceedings are instituted to enforce claims of creditors against the income, or if the beneficiary is adjudged a bankrupt, a forfeiture of all rights to income results under the spendthrift clauses contained in seven of the instruments; until the rights, claims, and demands of creditors are cancelled, terminated, or otherwise extinguished. The cestui que trust has no power of appointment of the corpus, no future estate in remainder, and no present interest in the res aside from a right in equity to compel the performance of the trust. In short, so far as the trust res is concerned, there never has been, nor never can be, a time when the respondent, Emily Bedford Fosdick, could, or can, assert any right of possession, control, or ownership over the securities."

In the opinion the court concluded that if the cestui que trust had a vested beneficial interest or estate in the trust at all, such interest was in the nature of an interest or estate in income, and that a tax thereon would amount, in effect, to a tax or income, contrary to the spirit and interest of Section 11 of Article IX of the Constitution of Florida.

The narrowly restrictive features appearing in the trust instruments in the cited case are not present in any of the trust instruments which are now before us on this appeal. In the first trust instrument the plaintiff, Waters F. Burrows, as cestui que trust, has a fixed lawful right to the income of the trust for life with a present right to alienate it; there being nothing in the trust instrument which attempts to restrain his right to alienate future anticipated income. He has the right,

in the event he survives the daughter, Elsa Anna Burrows, to dispose of the principal trust fund to and among his "issue, parents or spouse, and in such manner" as he may "by his . . . last will and testament designate and appoint." He has the reasonable expectation during his lifetime of receiving all or a portion of the corpus of the estate, because the trust instrument provides that the trustees (of which he is one) are authorize, "at such time or times and for such reason as they deem proper and sufficient in their absolute discretion, to pay over the whole or any part of the principal discharged of any trust, to the beneficiary entitled at the time of such payment to the current income of the property so paid over."

Under the second trust instrument the cestui que trust has the vested right to the income from the trust for life, with the power to alienate it; and has the power to require the trustees, at any time, to "transfer, assign and pay over to him any part of the trust property." The same is true with reference to the third trust instrument.

Under the fourth trust instrument the beneficiary, Elsa S. Burrows, is entitled to receive the income from the trust for life, with the concomitant right to alienate it, there being no restraints on alienation; and she is given the general power of appointment by will, which confers upon her the absolute right to determine what person or persons shall take the corpus of the estate after the trust has terminated. The trust instruments, therefore, are ruled by the principle stated in Wood v. Ford, supra, and not by Owens v. Fosdick.

The next question raised on the appeal is with reference to the assessments under which the plaintiffs are sought to be held liable for payment of the taxes. Section 199.04, Florida Statutes, 1941, provides that: "Intangible personal property shall be assessed by the tax assessor of each and every county in the State of Florida on a separate tax roll . . . Such tax roll shall distinctly show the name and address of the taxpayer and the amount of the valuation for tax purposes of intangible personal property assessed against such taxpayers on said tax roll." The plaintiffs submit that the plaintiff, Waters F. Burrows, has never been known as "Walter Burrows," the name

in which the assessments for the years 1935 to 1942, inclusive, have been made; and that, inasmuch as the statute directs that the tax rolls shall distinctly show the name and address of the taxpayer, and, inasmuch as Waters F. Burrows' name is not shown—even under the doctrine of idem sonans—the assessment does not comply with the statute and is void and unenforceable. They maintain further that, even should it be held by the court that the plaintiff, Waters F. Burrows, is sufficiently named in the assessment, the same may not be said for the plaintiff, Elsa S. Burrows, who is referred to in the assessment only by the words "and wife."

The rule of idem sonans will not be restricted to mean that the sounds produced by dissimilar spelling must be identical or indistinguishable from each other, but that they should be sufficiently alike in sound as not readily to suggest a difference to the mind of the hearer. Rhodes v. State, 74 Fla. 230, 76 So. 776. It will be observed that the surname of the plaintiffs Burrows, correctly appears in the assessment; the Christian name being the only name improperly spelled. It appears to us that the names "Walter" and "Waters," as used in the assessment, are sufficiently alike in sound as not readily to suggest a difference to the mind of the hearer; especially when coupled with the name "Burrows," the correct surname of the plaintiff. It is our view, therefore, that the assessments are not wholly void on the ground asserted by the plaintiffs; and that they should be considered as though they had been made by the tax assessor against "Waters F. Burrows and wife." We are of opinion, moreover, that under the facts of this case Elsa S. Burrows should not be heard to urge in a court of equity that the assessment against her as "wife" of "Walter Burrows" is unenforceable and void, because the assessment does not follow precisely the provision of the statute, which directs the assessor to "distinctly show the name . . . of the taxpayer." The law requires a taxpayer to return his property for taxes and pay the taxes due. The plaintiff, Elsa S. Burrows, has consistently ignored this requirement and has failed to pay the taxes for which she has been liable for a period of approximately ten years. Under the circumstances

she cannot be heard to complain that the assessor of taxes did not make the assessments in as full and correct detail as doubtless he would have done had the plaintiff performed her duty and made her returns as required by law.

The plaintiffs next submit that should the court hold that an assessment against "Walter Burrows and wife" is sufficient as a legal basis for the collection of intangible personal property taxes against "Waters F. Burrows and Elsa S. Burrows, his wife," the assessments are invalid under the facts of this case for the reason that the tax liabilities of the plaintiffs are several, not joint, liabilities. They submit further that the liabilities of the plaintiffs being several, not joint, there is no method by which the amounts each should pay as taxes can be ascertained, as the assessments now stand, and consequently that one of the plaintiffs may be required to pay off and discharge the tax liability of the other.

As appears from the trust instruments which are being considered upon this appeal, the beneficiaries thereunder have separate, not joint, property interests in the trusts created thereby. The plaintiff, Waters F. Burrows, is the present owner of the beneficial rights, interests, or estates created by the first two trusts instruments which we have described; the plaintiff, Elsa S. Burrows, is the owner of the beneficial rights, interests or estates under the third and fourth trust instruments. Each of the plaintiffs is separately liable for the payment of the intangible personal property taxes on the intangible personal property which each owns.

We are of the opinion that on the facts pleaded the chancellor acted correctly in sustaining the motion to dismiss the bill of complaint; for under these facts each of the plaintiffs, though denying liability, is nevertheless liable for the payment of intangible personal property taxes together with interest, penalties, and costs. However, it cannot be denied that the assessments made against the plaintiffs should have been separate, not joint, assessments against each plaintiff upon the separate beneficial trust interests or estates owned by each.

The plaintiffs have submitted their cause to a court of

equity and have asked the court to inquire into and determine the legality and validity of the tax assessments; to enter a declaratory judgment declaring whether or not the real property owned by them as an estate by entireties is subject to any legal liability, lien, or otherwise, as a result of the tax assessments; and if taxes are found to be due, then for what percentage of the assessments each of the plaintiffs is liable.

Under these circumstances we think that though the decree appealed from must be affirmed the affirmance should be without prejudice to the right of the plaintiffs to amend their bill within a reasonable time to be fixed by the chancellor, by admitting their individual tax liabilities, as found in this opinion, and praying for an ascertainment and determination of the amount, or amounts, owed to the taxing authorities of Sarasota County for taxes, interest, penalties and costs, by reason of their separate ownerships of the beneficial property interests under the trust instruments which we have been considering; and that upon the ascertainment and determination of such amounts, and the payment thereof into the registry of the court for the benefit of the property taxing officials of Sarasota County, the court below should enter its decree satisfying said taxes, interest, penalties and costs and discharging the plaintiffs, and each of them, and any and all property owned by them severally, jointly, or by entireties, of and from any joint or several lien or liability for or by reason of the accrual of the same.

All other questions raised by the appellants on this appeal have been duly considered and are found to be without merit.

The decree appealed from is affirmed, without prejudice to further proceedings in accordance with this opinion.

It is so ordered.

THOMAS, C. J., TERRELL, BUFORD, CHAPMAN and ADAMS, JJ., concur.

BARNS, J., dissents.

BARNS, J., dissenting:

Appellants' bill presented the facts concerning a controversy or adversary matter existing between themselves and

the respondents. They invoked the jurisdiction of the Circuit Court, seeking a declaratory decree concerning the merits of the controversy. The facts plead by the bill are clearly presented by the able opinion prepared by Mr. Justice SEBRING.

The bill seeks and specifically prays to have the Court inquire into and determine "whether the trusts as set out in this complaint are taxable under the intangible tax laws of the State of Florida;" "whether or not" the plaintifffffs are liable for, and "whether or not" certain land is subject to, certain taxes; and, among other things, further prays "that the duties, rights and responsibilities of the plaintiffs, Walters F. and Elsa S. Burrows, be declared and determined by the Court, ad for such other and further relief as may be equitable and just."

As stated by the appellee, the one real question before the chancellor and before this Court was and is: "Is there any equity in the bill?" If so, the chancellor should be reversed, otherwise affirmed.

The test of a bill seeking a declaratory decree is not that the plaintiff shall state a controversy wherein it shall appear that the merits of the controversy are on the side of the plaintiff. The essential is that there be a bona fide and actual controversy; the place wherein merit is found is not so material. See 16 Am. Jur., p. 282; Sheldon v. Powell, 99 Fla. 782, 128 So. 258; Ch. 21820, Acts of 1943, F.S.A. Sec. 87.01, et seq. A bill seeking a "declaratory decree" may be sufficient even though it affirmatively appears from the bill that the plaintiff is not entitled to a final decree adjudicating that all or any of the merits are on his side of the controversy presented.

Upon the facts presented I think the bill has equity and that the decree sustaining defendants'-appellees' motion to dismiss was error and that it should be reversed.