43 So.2d 424

**JOHNSON v. STATE.**

3 Div. 902.

Court of Appeals of Alabama.
July 19, 1949.

Rehearing Denied Oct. 5, 1949.

Robt. H. Jones and F. M. Smith, Ever-green, for appellant.

A. A. Carmichael, Atty. Gen., and M. Roland Nachman, Jr., Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant was indicted for manslaughter in the first degree in that he "unlawfully and intentionally, but without malice, killed Ustine LeCroy and Ellen Pearl Riggs, by driving a motor vehicle over, on or against them, etc."

His jury trial resulted in a verdict of guilty of the offense charged, and his punishment was fixed at imprisonment in the penitentiary for a term of eight years.

The evidence introduced by the State was directed toward showing that on 28 February 1948, around 6:30 P.M., the two young girls above mentioned were walking along the curb or gutter of Cleveland Avenue, in the Town of Castleberry.

Appellant's car was travelling in the same direction as the two girls. Two other automobiles, apparently one behind the other, were approaching in the opposite direction. The front car thus approaching had only its parking lights turned on.

The appellant's automobile was travelling at a rate of speed described by one witness to be "every bit of 45 or 50 miles per hour."

According to the driver of one of the two approaching automobiles appellant's automobile was being driven in such a manner that he, the other driver, brought his automobile to a stop to see what was going to happen.

Appellant's automobile "whipped over," struck the young girls, and the curb near which they were walking. One of the girls was knocked 31 feet by the impact, and the other 61 feet.

Appellant's car slackened its pace, but continued on down the street. Appellant returned to the scene some 3 to 5 minutes later.

A number of people had been attracted to the scene of the tragedy almost simultaneously with its occurrence. Three highway patrolmen arrived within about 20 minutes.

Several of the witnesses testified that when appellant returned to the scene he smelled of alcohol, acted in an abnormal manner, and was under the influence of alcohol. The three highway patrolmen also testified that when they arrested appellant upon their arrival he could not give coherent answers, he smelled of liquor, was thick tongued, and was drunk. In later questioning the appellant told them that he had not struck the two girls, but that another automobile, which he described, had done so.

Mr. Louie Phillips, one of the highway patrolmen, testified that in investigating the scene after his arrival he observed black marks on the right curb line, "looked like where something had been dragged." He also observed two bloody places on the highway, one 31 feet, and the other 61 feet, in distance from the black marks previously mentioned.

Upon examination of appellant's automobile, a shoe was found caught in the underpart of the automobile on the left side of the steering sector.

Ernest Green, a witness for the State, testified he was among the first to arrive at the scene after the two girls had been hit by an automobile. Both girls were unconscious, and their shoes were off. This witness "picked one of the shoes up and put it by the LeCroy girl."

Mr. Lowell Wilson, another witness for the State, testified that the girls were hit almost in front of his house. The next morning he found a shoe near the scene, in a stock gap leading from the street into his yard.

It thus appears that three shoes were found, two at or near the scene, and one caught in the underpart of appellant's automobile.

In this connection it appears from the record that Miss Charmine Duell, a witness for the State, testified that she was a friend of both of the victims, and was associated with them every day. She then identified two shoes as belonging to one of the dead girls, and a third shoe as belonging to the other one.

In this connection the State offered in evidence three shoes, and the record discloses the following:

"The State: We offer these three shoes identified by the witness, Duell, as being the shoes of the victims, Eulestine LeCroy and Ellen Pearl Riggs.

"Mr. Jones: We object on the ground it is irrelevant, incompetent and immaterial testimony.

"The Court: I think it has a tendency to show evidence from which the jury might draw a conclusion or inference from the fact that they have been found and identified as the shoes belonging to the two deceased girls—that it would give the jury a basis for an inference as to the speed of the car at the time of the impact.

"Mr. Jones: Irrespective of the fact that one was found the next morning?

"The Court: Yes.

"Mr. Jones: And you overrule our objection?

"The Court: Yes.

"Mr. Jones: We reserve an exception."

The defense offered several witnesses whose testimony tended to show that appellant had not been drinking on the occasion of this dual homicide.

Several character witnesses were also presented by the defense. One of these witnesses, Mrs. Sowell, testified on cross-examination that she had heard appellant say "that the Castleberry wreck—when he had that—he might have been drinking."

It also appears that during the cross-examination of one of appellant's character witnesses the court overruled objections to a question propounded to him if he had not heard about appellant being arrested two or three times for driving while intoxicated, to which the witness answered: "I heard it, but me knowing it, I do not."

There was further evidence introduced by the defense directed toward showing that both automobiles approaching appellant's car had their full lights on.

Ernest Waters, a defense witness, testified that after being struck the girls were not hurled into the air by the impact, but that the largest rolled about 20 feet, and the other was knocked over near a telephone post.

In his own behalf the appellant testified that on the night in question he was driving along the street in Castleberry and met another car with bright lights. He dimmed his lights, but the approaching car did not dim, so he turned his lights on bright again. He slowed down to about 25 or 30 miles per hour and pulled over near his right side. He did not see the two girls, but about this time he felt his automobile bump. He proceeded down the street about 300 feet to an

intersection and there turned back to see if he had hit anything.

When he returned to the scene appellant claimed he did not act in any abnormal fashion, but wanted to place the injured girls in his automobile and take them to a hospital. This was prevented by some of the people who had gathered at the scene.

Appellant denied he was in anywise under the influence of alcohol at the time, but stated he had taken one drink about 12:30 P.M. in the day.

He likewise denied telling the highway patrolmen that he had not struck the girls, but that another automobile had.

*At the appellant's request* the court in its oral charge to the jury instructed the jury that he was giving them a written charge to the effect that the appellant could not be convicted of manslaughter in the second degree, and that he was leaving to the jury only the charge of manslaughter in the first degree.

Later the court did, *at the request of the appellant,* give to the jury a written charge that if they believed the evidence in this case they could not convict the appellant of manslaughter in the second degree.

Appellant's counsel insists that the lower court erred in refusing four charges, all affirmative in nature, requested in writing by the appellant.

The indictment charged manslaughter in the first degree, an unlawful and intentional killing. Counsel urges that the evidence for the State fails to prove that appellant's act was intentional. Writing to a similar point in Reynolds v. State, 24 Ala.App. 249, 134 So. 815, 816, this court observed: "If the defendant in this case so recklessly drove an automobile along the public highway and in such manner as to endanger human life, and death resulted, the act would be manslaughter in the first degree whether the positive intention to kill was proven or not."

The evidence submitted by the State in the present case tends to show that this appellant, at about dusk, and while drunk, drove his automobile along a main street in the town of Castleberry at a rate of speed "every bit of 45 or 50 miles per hour."

In our opinion such evidence is ample to justify a jury's conclusion that appellant's conduct was wanton and evinced a reckless disregard for human life.

In Williams v. State, 30 Ala.App. 437, 7 So.2d 511, 513, the appellant had been convicted of murder in the second degree, the appellant having killed the deceased by colliding with another automobile in which deceased was riding. The evidence in the Williams case, supra, presents a picture somewhat similar to the present case. In holding that appellant's contention that he was entitled to the affirmative charge was without merit, this court asserted: "It is too clear for comment that one, as appellant, drunk (as the jury had a right to find him to be), driving his car at the rate of fifty miles per hour up hill and around a curve, at night, colliding with another car and causing the death of a person, is in no situation to ask that the jury be instructed to acquit him of guilt."

Appellant's counsel also urges that the court's action in granting appellant's request for the affirmative charge as to manslaughter in the second degree was a recognition by the lower court as a matter of law that if there was evidence of negligence in this case it was of such a low degree that it could not support a verdict of guilty of manslaughter in the second degree, and that therefore it could not support a verdict of guilty of manslaughter in the first degree, involving a higher degree of negligence.

The speciousness of this argument is that it does not necessarily follow that where the evidence clearly tends to show a wanton conduct if the State's evidence be believed, or innocent conduct if the defendant's evidence be believed, that any rational basis exists for a conclusion that under such circumstances the absence of simple negligence negatives the existence of wanton conduct. Certainly, the appellant having taken an "all or none" gamble in requesting and obtaining the affirmative charge as to manslaughter in the second degree, often a good court room tactic, is now in no position to complain that such trial tactic failed to produce the desired result.

In our opinion the evidence fully supports the verdict rendered. That is the

question with which we are now confronted. This appellant therefore is not in position to assert an alleged injury invited by himself, and rendered abstract under the jury's verdict.

We next consider the action of the court in overruling appellant's objections to the introduction into evidence of the three shoes. Two shoes it is clear were found at or near the scene of the accident. The other was found caught under appellant's car. The fact that one of these shoes was not found until the next day in no way affects its inherent admissibility, but may affect its probative value, which element addresses itself to the jury. Dodd v. State, 32 Ala.App. 504, 27 So.2d 259.

The highway patrolmen gave testimony as to certain black marks observed by them on the paved street, and as to the location of two blood spots found 31 and 61 feet away. There was other evidence indicating that these bloody areas were the respective locations at which the bodies of the victims came to rest after the impact of the striking automobile. The shoes possessed probative value in aiding the jury in determining the substance that may have been rubbed in the pavement and caused these black marks. As such they inferentially shed light on a material fact, i.e. the distance the two girls may have been knocked or hurled by the impact, thus tending to establish the true rate of speed of appellant's automobile at the time of impact.

The evidence furnished by the introduction of the shoes was therefore clearly not entirely immaterial, or illegal for any purpose.

It is to be noted that the only grounds interposed to the introduction of the shoes were the general grounds that such evidence was irrelevant, incompetent, and immaterial, though after the court's ruling counsel did inquire if he were overruling the objection irrespective of the fact that one of the shoes was found the next morning. As above indicated this latter fact did not affect the admissibility of the later found shoe.

If only general grounds are assigned in support of objections, no error results in overruling such objections so supported unless the evidence is illegal for any purpose, and cannot be made legal by other evidence, or by otherwise framing the question. Louisville & Nashville R. Co. v. Scott, 232 Ala. 284, 167 So. 572. Unless the objection particularizes the defect in the question neither the interrogator, nor the court, is apprised of a defect that may be latent therein, and no opportunity is furnished to correct such defect by reframing the question, or supplying additional evidence. Walker v. Jones, 33 Ala.App. 348, 34 So.2d 608. Thus it is the rule that where an objection is supported only by general grounds, it may be overruled without error, unless the evidence is manifestly illegal, and irrelevant, and apparently incapable of being rendered admissible, in connection with other evidence. Brannon v. State, 16 Ala.App. 259, 76 So. 991, certiorari denied 201 Ala. 695, 77 So. 999.

While it may be conceded that as to one of the shoes introduced the proper predicate is lacking identifying it as the shoe found by the witness Green, and that it is not clearly shown that the shoes introduced were the same as those found at the scene or under the car, there is no basis for assuming that the Solicitor was apparently incapable of correcting this defect in the question had his, and the court's, attention been directed to it specifically by proper grounds, and opportunity thus furnished for eradicating this defect by additional evidence. It is our conclusion therefore that no reversible error resulted from the court's ruling in this instance.

In our opinion the court did not err in overruling appellant's objection to a question propounded to Mr. Dave Sowell, a character witness for the defendant, inquiring in effect if Mr. Sowell, had not heard about appellant being arrested two or three times for driving an automobile while drunk.

Opposing counsel may, on cross-examination, ask a character witness if he has not heard of certain misconduct which would tend to mitigate against the character of person whose good repute the witness is seeking to establish. This is al-

lowed for the reason that an adversary has a right to test the accuracy, credibility, and sincerity of a witness when the privilege of cross-examination is exercised. Mullins v. State, 31 Ala.App. 571, 19 So.2d 845, and numerous cases therein cited.

It further appears that after the jury had retired they were returned to the court room and instructed by the court as follows: "Gentlemen, during the progress of the trial there was testimony introduced to the effect that this defendant had been arrested charged with driving while drunk and perhaps some other charges that I don't recall, and I permitted that testimony to go to the jury, over the objection of the defendant, and I think that in fairness to him I should exclude that testimony from your consideration about what he had been charged with by other people, and you will please not consider that testimony in any manner whatsoever; what he had been charged with, since he has come back from the war or before then. I just wanted to make that plain; it is, I think, due this defendant that I make that correction and it is for that purpose that I asked you to come back. Now you may retire and proceed."

As above indicated, it is our opinion that the court's ruling on the question propounded to Mr. Sowell on cross-examination was free from error. His action in eliminating the evidence thus obtained was not necessary. In anywise it could not have injured appellant.

It is our opinion that this record is free of error probably injurious to the substantial rights of this appellant, and it is therefore due to be affirmed. It is so ordered.

Affirmed.

BRICKEN, P. J., not sitting.

## On Rehearing.

HARWOOD, Judge.

In our opinion above we stated that "The evidence introduced by the State was directed toward showing" etc. There then follows a recital of certain facts produced by the testimony of various witnesses for the State. Counsel for appellant complains in his brief in support of his application for rehearing that we should make a different "finding of facts," in that in certain instances the facts as stated by us were not testified to by all of the witnesses for the State. For instance, we stated that one witness described the rate of speed of appellant's automobile as being "every bit of 45 or 50 miles per hour." Counsel points out that another state's witness, Burgess Waters, fixed the speed of appellant's automobile at 40 miles per hour.

Counsel further points out that only one witness for the State testified that the front car approaching had only its parking lights on, while another State's witness testified that the lights of the approaching car were on bright, as did two defense witnesses.

Our observation that the State's evidence was directed toward showing, etc., in no sense constitutes a finding of fact as to the evidence set forth, but merely constitutes facts which the jury might reasonably have inferred from some of the evidence introduced. We have reread this evidence, and feel that the tendencies of the evidence as set out, both for the State and the defense, in their strongest aspects, were fairly depicted as stated above.

Appellant for the first time now raises the point that the indictment names one of the deceased girls as Ustine LeCroy, whereas in the transcription of the evidence her name is spelled as Eulestine LeCroy.

While it is true that in the indictment the LeCroy girl is described as Ustine LeCroy, and in practically every place where her name appears in the transcription of the evidence her name is written by the reporter as Eulestine, it is to be noted that Mr. Lowell Wilson testified that he remembered the incident when Ellen Pearl Riggs and Eulstine LeCroy were killed. It was then called to the court's attention that the defendant was not present in the court room, and Mr. Wilson repeated his testimony upon defendant's return to the court room. In this repeat portion of Mr. Wilson's testimony the LeCroy girl's name is spelled Eulestine by the reporter.

This aside, if "Eulestine" and "Ustine" may properly be considered as idem sonans, then the variance between the allegata of the indictment and the probata is immaterial.

The doctrine of idem sonans has been much enlarged by modern decisions to conform to the rule that a variance to be material must be such as to mislead the opposite party to his prejudice. State v. White, 34 S.C. 59, 12 S.E. 661, 27 Am.St.Rep. 783; Raven v. State, 149 Tex. Cr.R. 294, 193 S.W.2d 527. Identity of sound is the test, and not identity of spelling. If the attentive ear finds difficulty in distinguishing them when pronounced, no matter how spelled, names are idem sonans.

The following names have been held to be idem sonans: "Walter" and "Waters," Burrows v. Hagerman, 159 Fla. 826, 33 So.2d 34; "Ray" and "Roy," Platt Cattle Co. v. Scott, 157 Fla. 286, 25 So.2d 655; "Belle" and "Bella," Reid v. State, 168 Ala. 118, 53 So. 254.

Even a slight difference in pronunciation is unimportant if the attentive ear finds difficulty in distinguishing the two names when pronounced, Webb v. Ferkins, 227 Iowa 1157, 290 N.W. 112, provided the misspelling of the name does not transform it into a wholly different appellation. Chaverea v. State, 141 Tex.Cr.R. 592, 150 S.W.2d 241.

Under the above rules it is our conclusion that "Ustine" and "Eulestine" must properly be considered as idem sonans, and that certainly the difference in the spelling of the deceased girl's name did not reasonably tend to mislead the defendant in his defense in the trial below. No error resulted therefore in the refusal of defendant's request for the affirmative charge because of this matter.

Other matters are argued in appellant's brief in support of this application for rehearing. These remaining propositions have in our opinion been sufficiently dealt with in the original opinion. We therefore omit discussion of them.

Application overruled.