Appellant was indicted for robbery. He was convicted of grand larceny and the trial judge sentenced him to ten years imprisonment in the penitentiary. Prior to arraignment he was found to be indigent and counsel was appointed to represent him at arraignment and trial. He pleaded not guilty. After conviction he gave notice of appeal. He is in this Court with a free transcript and trial counsel represents him on this appeal.
Omitting the formal parts the indictment reads as follows:
 "The Grand Jury of said County charge, that before the finding of this indictment, McArthur Gray, also known as McAuthur Gray, also known as Spooky, whose name is unknown to the Grand Jury other than as stated, feloniously took, to-wit: $200.00 lawful monies of the United States, a further description of same being unknown to the Grand Jury, the personal property of The City of Huntsville, Alabama, a Municipal Corporation, from the person of William Harris, or from or in his presence, and against his will, by violence to his person, or by putting him in such fear as unwillingly to part with the same, against the peace and dignity of the State of Alabama."
The evidence is in hopeless conflict and only a jury could unscramble the conflicting testimony and arrive at a verdict.
The State's entire case was based on the testimony of one witness, William E. Harris, a police officer with the City of Birmingham. Harris testified that he had been a police officer for about two and a half years and had considerable experience in drug enforcement work. He received his training with the Drug Enforcement Administration, which is a Federal Narcotics Agency, during a two-year period. He stated that he had testified in Court in 47 cases of drug prosecutions and there were convictions gained in all 47 cases.
He further testified that in July, 1975, he was assigned from the Drug Enforcement Administration to be on loan to the Huntsville Police Department for a period of approximately four months to work "under cover" in purchasing narcotics in the Huntsville area. On July 22, 1975, he was in Huntsville in furtherance of his duties to buy drugs from pushers and he posed as a pusher himself. On that date he had made arrangements to purchase approximately one teaspoon of heroin from appellant known to him as "Spooky" Gray. He met appellant at the Regency Apartments, 102 Winchester Road, in Huntsville, in Madison *Page 976 
County, Alabama, where the sale and purchase were to take place. The time was about 4:00 p.m. and he initially met appellant who was alone at that time.
Appellant told the officer that he had been unable to contact his source and get the heroin but he would be able to get it later that evening from his connection and instructed the officer to wait around for about 30 minutes and in the meantime he would get in touch with his connection and have the heroin ready for him. The officer was seated in an adjoining apartment at the Regency Apartments complex. About an hour later appellant returned and told the officer he had made his contact and the heroin was ready for him to buy.
The officer and appellant rode together to Apartment B-10 of the Regency Apartments. On the way to the appointed place the officer noticed that appellant had a pearl handled .38 caliber pistol tucked in his pants and he questioned him about the weapon and appellant responded that it was not unusual for him to have a gun at the time he was processing a sale of narcotics or heroin. It should be noted here that the officer thought initially that he was going to make the buy from appellant.
The officer and appellant entered Apartment B-3 at the Regency Apartments. The officer remained near the front doorway and appellant walked to a bedroom in the back. The officer heard appellant tell someone, "the dude is here." Shortly thereafter appellant and one black male, who the officer later learned was Charles Jordan, came out of the bedroom. The officer saw appellant give his pistol to Jordan who went back into the bedroom. Appellant asked the officer to follow Jordan.
The officer and Jordan stayed in the bedroom for approximately ten minutes. During this time the bedroom door was open and the officer saw appellant pass the open door on at least two occasions. While the officer and Jordan were in the bedroom, Jordan offered the officer a foil package. The officer inspected the foil package and realized that the contents were not heroin, but brown sugar. The officer told Jordan that he was not going to buy it as it was not heroin. Jordan became upset and angry and pulled the .38 pistol that appellant had given him and pointed it at the officer and threatened to kill him unless he gave him $200.00. The officer reached in his pocket and gave the man with the pistol ten twenty dollar bills or $200.00. At one point during the robbery appellant stopped at the bedroom door and saw Jordan pointing the pistol at the officer.
Jordan and appellant left the apartment together and as they were going down the stairway the officer heard appellant ask Jordan, "How much did you hit him for?" Jordan replied that he hit him for $200.00 and appellant laughed. The officer saw Jordan hand the pistol back to appellant.
According to the officer's testimony he did not see anyone else in the apartment other than appellant and Jordan, but he heard voices. He could not say they were voices of other people present somewhere in the apartment or voices from a television set. Officer Harris made a positive in-court identification of appellant as being a participant in this robbery.
On cross-examination the officer testified that he positively saw appellant hand the pistol to Jordan and that he was positive that appellant witnessed the holdup as he stopped by the opened door to the bedroom and saw Jordan pointing the pistol directly at him. He was also positive that after the robbery he saw Jordan give the pistol back to appellant. The State rested and appellant made the following motion:
 "Mr. Spencer: Your Honor, at this time the defendant would make a motion to exclude the State's evidence. Our grounds for this motion are based on the fact that the charge here is robbery. I do not think they have proved that my client took part in the robbery, or even proved that he was an accessory, as defined by the laws of this state. Also, I feel that there is a variance in the indictment and the proof, in that there was no proof that this money belonged to the City of Huntsville or to the State's prosecuting witness, the victim. As I recall, there has *Page 977 
been no proof as to who the money belonged to.
 "The Court: I will have to overrule your motion, based on the fact that the law requires that it be taken from him or in his presence and the property which either belonged to him or which was under his personal protection and control. The money was under his protection and control. Therefore, I will have to deny your motion.
 "Mr. Spencer: Judge, I don't recall any direct testimony that the money was under his control or under his protection.
 "The Court: He said he had it in his pocket, in his possession, and reached in his pocket and pulled money out, peeled off ten twenty dollar bills.
"Mr. Spencer: I except to your ruling."
Appellant called several witnesses in his behalf. Sam Crockett testified that he was an acquaintance of appellant and was present at the Regency Apartments, Apartment B-3, on July 22, 1975. Also in the apartment were appellant, Charles Jordan, David Clemons, and Charles Story. That Crockett was taking a shower at approximately 5:00 p.m. and he stated that when he came back to the living room, he saw Officer Harris. That Clemons had introduced the officer as his cousin from Mobile. That everyone appeared to be in good spirits. Approximately one week later Clemons informed Crockett that appellant had sold Officer Harris brown sugar instead of heroin.
Charles Story testified that he was present at B-3 Regency Apartments on July 22, 1975. That he, appellant and Charles Jordan were conversing around a table when David Clemons and Officer Harris arrived. Shortly thereafter, Jordan and Officer Harris went to the back of the apartment for several minutes. Jordan came back and asked for change for a twenty dollar bill. Jordan went to the back of the apartment again and in a few minutes he and Officer Harris came back into the room. Officer Harris then left the apartment saying to Jordan, "Thank you, man. I'll check you later on."
Charles Jordan testified that he was also at the Regency Apartments, B-3, on July 22, 1975. He stated that on that day he sold a bag of brown sugar to Harris which he represented to Officer Harris as heroin for $150.00. He further testified that the transaction took place in the bedroom of the apartment and that during this entire transaction appellant was in the living room. He stated that this money was not forcibly taken from Officer Harris and that no weapon was involved.
Appellant took the stand and admitted that he and Charles Jordan worked together to sell Officer Harris a substitute for the heroin he was trying to buy. He testified that Jordan and the officer went to the back of B-3 Regency Apartments to transact the sale but that he remained in the living room during the whole time that Jordan and the officer were in the bedroom. Appellant denied ever owning a pistol or that he gave his pistol to Jordan on the occasion in question. He also denied any intent to rob Officer Harris.
David Clemons was an informant for the Huntsville Police Department. He testified that he tried to arrange for Officer Harris to buy heroin from appellant but at that particular time appellant did not have any to sell. Later he asked Officer Harris and appellant to go to Charles Story's apartment — B-3 Regency Apartments. That when they arrived, appellant and Charles Jordan went to the back of the apartment and in a few minutes appellant came for Officer Harris and sent him back to the bedroom where Jordan was waiting and that appellant remained in the living room with Clemons, Sam Crockett and Charles Story. Clemons stated that this was the second time that he had accompanied Officer Harris to this apartment, and that on the first visit Harris bought some marihuana. He further said that when Officer Harris came back in the living room, that he and Harris left the apartment together and Harris told him that he had been forced to buy some brown sugar.
On cross-examination he testified that he had introduced Harris to all the people in *Page 978 
the apartment as his cousin from Atlanta — not Mobile. He admitted this was the last occasion that he worked as an informer.
Officer Harris was called by the State on rebuttal and testified that David Clemons was with him on July 21, 1975, when he purchased some marihuana from one David Meredith but that Clemons was not present with him on July 22, 1975, when he was robbed of $200.00. He further stated that appellant and Jordan were not present where he made the marihuana buy from Meredith on July 21, 1975. Harris further testified that three days after the robbery Clemons told him that he knew that the robbery was going to take place and the reason he didn't go with the officer on July 22, 1975, was because he didn't want to get involved with what was going to take place.
The indictment alleged in specific terms that the $200.00 taken from Officer William Harris at gunpoint was the personal property of the City of Huntsville, a municipal corporation. There is not one thread, glimmer or scintilla of evidence in the entire record to show that Officer Harris had any connection with the City of Huntsville as agent, servant or employee, or that any official of the City of Huntsville ever turned over to Harris any money in the performance of his duties as an undercover agent. There was no evidence that he ever had custody of any money belonging to the City of Huntsville as agent, bailee or otherwise.
A material variance in the allegation of an indictment and the proof offered in support thereof is fatal to a conviction. The motion to exclude the State's evidence on this ground should have been granted. Wideman v. State, 269 Ala. 49, 110 So.2d 298.
No proposition of law is more fundamental than the one requiring that the proof at trial must correspond with the material allegations of the indictment. Stone v. State, 115 Ala. 121,22 So. 275; Prentice v. State, 24 Ala. App. 587, 139 So. 437;Owens v. State, 46 Ala. App. 591, 246 So.2d 478; Gilmore v. State,99 Ala. 154, 13 So. 536; Lindsay v. State, 19 Ala. 560; Johnsonv. State, 35 Ala. 363.
It was wholly unnecessary to have alleged in the indictment that the money taken was the personal property of the City of Huntsville. Having done so it was incumbent upon the State to prove this allegation. Harris v. State, 44 Ala. App. 449,212 So.2d 695.
The motion to exclude the State's evidence on the ground there was a fatal variance between the allegations laid in the indictment and the proof offered at trial should have been granted.
The judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
All the Judges concur.