The respondent, Ronnie Gene House, was indicted under Code 1975, § 13-1-42, for unlawfully assaulting Edward Wilburn with a deadly weapon "at which time the *Page 941 
said Edward Wilburn was engaged in the active discharge of his lawful duty or duties as a Deputy Sheriff for Morgan County, Alabama." The jury convicted him "as charged" and the court set the punishment at fifteen (15) years' imprisonment. On March 27, 1979, the Court of Criminal Appeals reversed and rendered appellant's conviction, holding that the fact that Edward Wilburn was actually a jailer and not a deputy sheriff constituted a fatal variance between the indictment and proof, and that absent the essential proof that Edward Wilburn was a deputy sheriff the evidence was insufficient to support the jury's verdict. On April 17, 1979, the Court of Criminal Appeals denied the state's application for rehearing. This court granted the state's petition for writ of certiorari on July 16, 1979, to determine whether the variance between the indictment and proof in this case is material.
The indictment charged that "Edward Wilburn" was assaulted by the respondent Ronnie Gene House, "at which time the said Edward Wilburn was engaged in the active discharge of his lawful duty or duties as a deputy sheriff for Morgan County, Alabama" when in fact the said Edward Wilburn was engaged in his lawful duties as a jailer at the time of the assault. The wording of the statute under which the respondent was indicted is as follows:
 Whenever ANY PEACE OFFICER OR OTHER LAW ENFORCEMENT OFFICER OF THIS STATE OR ANY POLITICAL SUBDIVISION OF THIS STATE shall be engaged in the active discharge of his lawful duty or duties, it shall be unlawful for any person to commit any assault with a deadly instrument upon such officer, and any person guilty of such assault with a deadly instrument shall be guilty of a felony and, upon conviction, shall be imprisoned in the penitentiary for not less than two years nor more than 20 years. (Acts 1967, No. 746, p. 1600, § 3.)
Code 1975, § 13-1-42. (Emphasis added.)
We believe that a jailer as well as a deputy sheriff is a peace officer within the meaning of Code 1975, § 13-1-42. Acts 1967, No. 746, p. 1600, § 3, is codified in Code 1975, § 13-1-42. The Court of Criminal Appeals of Alabama gave an expansive interpretation to Acts 1967, No. 746, p. 1600, § 3, and held that a custodian of a convict does fall within the statutory phrase "any peace officer or other law enforcement officer."
 While a correctional officer may not have authority to make an arrest for criminal violations away from the premises of our prisons in Alabama, he is clothed with complete authority to arrest inmates who commit crimes in prison and on properties under the control of the Alabama Board of Corrections.
 We hold that Mr. Fails and Mr. Lee were "peace officers or other law enforcement officer(s)" engaged in the active discharge of their lawful duties at the time they were assaulted and stabbed by Lowe and Smith.
Lowe v. State, 54 Ala. App. 280 at 283, 307 So.2d 86 at 89 (1974). The special concurrence of Presiding Judge Cates, who reached the same result that the majority of the court reached, but on a different rationale, was adopted by all the judges on rehearing. In that special concurrence, Judge Cates relied heavily on the opinion of the Superior Court of New Jersey inState v. Grant, 102 N.J. Super. 164, 245 A.2d 528:
 The crime here in question is denounced in § 3 of Act No. 746, September 8, 1967. Said Act [also set out in the 1973 Pocket Part Supplement of Michie's unofficial 1958 Code as T. 14, §§ 374 (18)-(20)] contains no definition of the expression "peace officer or other law enforcement officer."
. . . . .
 The expression "peace officer" used in Act No. 208 of August 16, 1966, as amended, is overbroad in that it "includes" all employees of the department of corrections and institutions. This could embrace not only prison guards but also stenographers, file clerks, auditors, computer programmers and other office workers, as well as the custodians of the convicts. *Page 942 
 The latter category I do consider to be within § 3 of Act 746, supra, of instant concern. However, I reach that conclusion by slightly different reasoning from that used by my Brother Harris. Instead, I would rely on the language in State v. Grant, 102 N.J. Super. 164, 245 A.2d 528, wherein the court says:
 "Defendant first urges that an Essex County Penitentiary correction officer is not a `law enforcement officer' within the intendment of N.J.S. 2A:90-4, N.J.S.A. The functions and responsibilities of correction officers performing the duties described above, are such that we are unable to agree with defendant's contention. Whether those performing such duties bear the title of jail guard, warden or correction officer, overseeing the custody and punishment of law violators is as much a part of law enforcement as undertaking the detection and apprehension of such violators. Moreover, they have the further duty of detecting and preventing violations of law by prisoners, e.g., assaults on other prisoners, escapes, etc., and in that sense are literally law enforcement officers. * * * We are satisfied that the Legislature intended to encompass within the scope of the statute those persons whose duty it is to supervise the administration of criminal punishment and to maintain security within and without the confines of the State's penal institutions. We find no basic [sic] in logic or reason for limiting the meaning of the term "law enforcement officer" to persons empowered by law to investigate, arrest and prosecute violators of the law, as urged by defendant. * *"
 I have only written to such length because I think it's elemental that penal statutes must be strictly construed. If the instant statute applied only to "peace officers" I might have voted to reverse. However, I do think that prison guards are "law enforcement officers," particularly since it is their duty to force the convicts to obey and endure the sentence of the law.
Lowe v. State, 54 Ala. App. 280, 285, 307 So.2d 86, 90-91
(1974).
In Hill v. State, 339 So.2d 601 (Ala.Cr.App. 1976), the Court of Criminal Appeals again gave an expansive interpretation to the phrase "peace officers" by construing it to include railroad policemen. Under the reasoning of the Court of Criminal Appeals in Lowe and Hill, which we adopt, it is immaterial whether the victim is a deputy sheriff or jailer so long as he is a law enforcement officer, engaged in his duties at the time of the assault. This is not a case where the indictment charged an assault against a peace officer and the proof at trial revealed that the assaulted person was not, in fact, a peace officer. Such a variance is clearly material. This is not a case where the defendant was misled by the variance between the indictment and proof in regard to the capacity in which the victim of the assault was employed. The law in this state is well settled that: "To be material, a variance as to the name alleged in the indictment from that proved by the evidence must be such as to be misleading or substantially injurious to accused in making his defense, or to expose him to the danger of a second trial on the same charge."Rupert v. State, 45 Ala. App. 84, 86, 224 So.2d 921, 923 (1969);Helms v. State, 40 Ala. App. 622, 624, 121 So.2d 104 (1960);Johnson v. State, 34 Ala. App. 623, 43 So.2d 424 (1949); Tysonv. State, 361 So.2d 1182, 1188 (Ala.Cr.App. 1978).
Moreover, in order to determine whether the variance between the indictment and proof was material in this case it is necessary to examine the policy or reason behind the rule of law which requires that "the proof at trial must correspond with the material allegations of the indictment." Owens v.State, 46 Ala. App. 591, 246 So.2d 478 (1971).
The policy behind the variance rule is that the accused should have sufficient notice to enable him to defend himself at trial on the crime for which he has been indicted and proof of a different crime or the same crime under a different set of facts deprives him of that notice to which *Page 943 
he is constitutionally entitled. Citing Alabama cases as authority, C.J.S. states the rule as follows:
 Where it is necessary to state the name of a third person as a part of the description of the offense, the name must be correctly stated and a material variance is fatal. . . . The modern rule, however, is that it is a question of identity;[1] and where the identity of the person named in the indictment with the one named in the evidence is established,[2] or where the inaccuracy is not misleading[3] or substantially injurious to accused,[4] the variance is not fatal. It is sufficient if the record is such as to inform accused of the charge and to protect him against another prosecution for the same offense.[5]
42 C.J.S. Indictments and Informations § 265 (1944).
This court has stated the policy behind the fatal variance rule as follows: "The purpose of the rule is for identification and notice to defendant, and if those purposes are met no substantial injury to defendant results." Vaughn v. State,236 Ala. 442, 445, 183 So. 428, 430 (1938). The same policy was enunciated by this court in McCoy v. State, 232 Ala. 104, 106,166 So. 769, 770 (1936), in the following manner: "[A] mere inaccuracy, where the identity of the person named in the indictment with the one named in the evidence is established, is not fatal under the modern rule." Thus the rule of law governing in this state is that a variance between an indictment and proof at trial is not material where "the identity of the person named in the indictment with the one named in the evidence is established." McCoy, supra.
Both the indictment and the proof at trial specifically named the assaulted peace officer as "Edward Wilburn." The indictment stated that Edward Wilburn was a deputy sheriff and the proof showed that Edward Wilburn was actually a jailer. The question thus presented to this court is whether the variance between the indictment and the proof, in regard to the capacity in which the said Edward Wilburn was employed, was material enough to deprive the respondent, Ronnie Gene House, of sufficient notice and opportunity to defend himself against the crime with which he was charged. We hold that that variance in regard to Edward Wilburn's job was not material because he was specifically identified by name both in the indictment and at trial.
The law of this state is well settled that "[t]here is no material variance where there is proof of so much of an indictment as shows the defendant committed a substantial offense specified therein." Dotson v. State, 337 So.2d 83
(Ala.Cr.App. 1976). See also Owens v. State, 291 Ala. 107,278 So.2d 693 (1973); Taylor v. State, 47 Ala. App. 285,253 So.2d 354 (1971); Fuller v. State, 39 Ala. App. 219, 96 So.2d 829
(1957); Blakeney v. State, 244 Ala. 262, 13 So.2d 430 (1943);Tyson v. State, 361 So.2d 1182, 1188 (Ala.Cr.App. 1978). But see Gray v. State, 346 So.2d 974 (Ala.Cr.App. 1976). The trial court found that this defendant assaulted the peace officer "Edward Wilburn," who was identified by name in the indictment and at trial. Thus "there [was] proof of so much of [the] indictment as shows the defendant committed [the] substantial offense specified [in Code 1975, § 13-1-42]," Dotson, supra, and therefore the variance in regard to Edward Wilburn's job was not material.
For each of the foregoing reasons, i.e., the defendant was not misled by the *Page 944 
variance, the victim of the assault was identified by name in the indictment and at trial, and proof was adduced at trial that Ronnie Gene House committed the substantial offense of assaulting a peace officer; we hold that the variance in regard to the capacity in which the victim of the assault was employed was not material.
Justice Bloodworth, with whom Justices Almon, Embry, and Beatty join, in dissent, poses the following question: "If the majority is right in concluding that it is immaterial whether the victim is `deputy sheriff' or `jailer,' and `deputy sheriff' is not a material averment of the indictment would it matter if `deputy sheriff' were left out altogether?" Our answer is certainly it would matter because Code 1975, § 13-1-42, only proscribes assaults against peace officers and has no application to assaults generally. Absent some allegation that the victim was a peace officer, it would be impossible to prove the conduct prohibited by § 13-1-42, i.e., an assault on a peace officer. The hypothetical posed by Justice Bloodworth deletes the sole allegation in the indictment that the victim was a peace officer and therefore clearly removes the conduct, i.e., assault on a civilian, from the purview of the statute, which applies only to assaults on peace officers.
For the same reasons the dissenters' reliance on Owens v.State, 46 Ala. App. 591, 246 So.2d 478 (1971), is inapt. In that case, unlike the instant case, the defendant was indicted under the wrong statute. In Owens the defendant was indicted under the 1958 Recompiled version of Code 1940, Tit. 14, § 153, which refers solely to escapes from a penitentiary, when he should have been indicted under Tit. 14, § 151, "Escape of convict from jail or HARD LABOR" (emphasis added). The defendant, who was working on a road gang twelve miles from the penitentiary, not being in a penitentiary, clearly could not be proven to have escaped from a penitentiary. In the instant case the indictment left no doubt but that the victim was a peace officer. Thus, the assault on this peace officer, Edward Wilburn, whether he be a jailer or a deputy sheriff, clearly falls within the purview of § 13-1-42 under which Ronnie Gene House was indicted. Such is not the case with Owens (where the defendant was indicted for escaping from a penitentiary when he was not in a penitentiary at the time) and such would not be the case if the facts were as posed in Justice Bloodworth's hypothetical where the indictment charging an assault on a peace officer failed to allege that the victim was a peace officer. We fail to see how Ronnie Gene House was in any way "misleding or substantially injurious . . in making his defense," Rupert, supra, and therefore we hold the variance in regard to the victim's specific occupation was not material.
REVERSED AND REMANDED.
MADDOX, FAULKNER, JONES and SHORES, JJ., concur.
BLOODWORTH, J., with whom ALMON, EMBRY and BEATTY, JJ., join, dissents.
[1] As authority, C.J.S. cites the following Alabama cases:Vaughn v. State, 236 Ala. 442, 183 So. 428 (1938), and McCoy v.State, 232 Ala. 104, 166 So. 769 (1936).
[2] C.J.S. pocket part cites: Blackmon v. State, 46 Ala. App. 274,240 So.2d 696, cert. denied, 286 Ala. 733, 240 So.2d 699
(1970).
[3] C.J.S. pocket part cites: Johnson v. State, 34 Ala. App. 623,43 So.2d 424, cert. denied, 253 Ala. 194, 43 So.2d 431 (1949).
[4] C.J.S. pocket part cites: Hollis v. State, 37 Ala. App. 453,70 So.2d 279 (1954).
[5] C.J.S. pocket part cites: Rupert v. State, 45 Ala. App. 84,224 So.2d 921 (1969).