102 N.J. Super. 164 (1968)
245 A.2d 528
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES GRANT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 17, 1968.
Decided July 18, 1968.
*166 Before Judges CONFORD, LABRECQUE and HALPERN.
*167 Mr. Gerald T. Foley, Jr., Assistant Public Defender, argued the cause for appellant (Mr. Peter Murray, Public Defender, attorney; Mr. Richard Newman, Deputy Public Defender, of counsel; Mrs. Susan T. Sinins, Assistant Public Defender, on the brief).
Mr. Matthew J. Scola, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Defendant James Grant appeals from a judgment of conviction for assault and battery upon a law enforcement officer in violation of N.J.S. 2A:90-4 and from the revised sentence imposed therefor.
The offense occurred on November 20, 1966 while defendant was serving a seven month sentence, commencing July 19, 1966, in the Essex County Penitentiary on charges of shoplifting, failure to have a narcotics registration card in his possession, and being under the influence of a narcotic drug. At the time of his arrest on the above charges, he was on parole from the New Jersey State Prison, having been convicted in January 1965 of breaking and entering and larceny. The State parole authorities filed a detainer against him shortly after his arrest.
On November 20, 1966, during the course of a riot in the mess hall of the Essex County Penitentiary, Everett Hannon, a correction officer on duty there, was allegedly assaulted by defendant and later knocked unconscious by other inmates, suffering a concussion and three broken teeth. Three days later, while still in the hospital, and after viewing some 50 pictures of prisoners, he identified a picture of defendant as that of one of his assailants. He again identified defendant at the trial.
While on duty in the mess hall, Hannon was wearing his official uniform and badge but was not armed. He and other correction officers were authorized to carry weapons only *168 when performing out-of-prison functions such as transporting prisoners to and from courts or hospitals or when guarding prisoners working outside the prison grounds. In addition to the above, his duties were, generally, to supervise prisoners and maintain order in the penitentiary.
Defendant first urges that an Essex County Penitentiary correction officer is not a "law enforcement officer" within the intendment of N.J.S. 2A:90-4. The functions and responsibilities of correction officers performing the duties described above, are such that we are unable to agree with defendant's contention. Whether those performing such duties bear the title of jail guard, warden or correction officer, overseeing the custody and punishment of law violators is as much a part of law enforcement as undertaking the detection and apprehension of such violators. Moreover, they have the further duty of detecting and preventing violations of law by prisoners, e.g., assaults on other prisoners, escapes, etc., and in that sense are literally law enforcement officers. In certain counties (including Bergen) they are specifically vested by statute with all the power and authority of constables. See N.J.S.A. 30:8-18. It would be incongruous to hold that correction officers were law enforcement officers in Bergen, but not in Essex. We are satisfied that the Legislature intended to encompass within the scope of the statute those persons whose duty it is to supervise the administration of criminal punishment and to maintain security within and without the confines of the State's penal institutions. We find no basis in logic or reason for limiting the meaning of the term "law enforcement officer" to persons empowered by law to investigate, arrest and prosecute violators of the law, as urged by defendant. Cf. Caldaro v. Ferber, 39 N.J. 314 (1963); Bownes v. Meehan, 45 N.J.L. 189 (Sup. Ct. 1883).
Equally unconvincing and without merit is defendant's contention that the phrase "other law enforcement officer" in N.J.S. 2A:90-4 is so vague and ambiguous as to render the statute unconstitutional. See United States v. *169 National Dairy Products Corp., 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963), rehearing denied 372 U.S. 961, 83 S.Ct. 1011, 10 L.Ed.2d 13 (1963).
Following his conviction, the court, on December 5, 1967, sentenced defendant to State Prison for a term of not less than three nor more than five years to run concurrently with the balance of any term to be served on a charge of violation of parole then pending against him. On January 5, 1968, following a letter to the court from the Department of Institutions and Agencies, the sentence was revised to delete that portion thereof which provided that the sentences were to be concurrent. Defendant challenges the revised sentence.
In deleting the provision making the sentence concurrent with the one to be served for violation of parole, the trial judge was motivated solely by the view that N.J.S.A. 30:4-123.27, to which his attention had been directed by the foregoing letter, precluding the imposition by him of a concurrent sentence. In this we find him to have been mistaken.
N.J.S.A. 30:4-123.27 governs the procedure to be followed by the State Parole Board with reference to "persons serving sentence or awaiting trial for crime committed after parole." It provides for the detaining of a prisoner confined in an institution other than the one from which he was paroled, for a subsequent offense committed while on parole. The trial judge relied upon the final sentence contained therein, which is as follows:
"* * * No part of a sentence, for which a parole has been granted and revoked, shall be deemed to be served by a prisoner, whose parole was revoked, while he is serving a sentence for an offense other than the one for which he was paroled."
Prior to enactment of the present statute, L. 1948, c. 84, now N.J.S.A. 30:4-123.1 et seq., certificates of parole (and comparable licenses issued prior to 1948) containing conditions dealing with the subsequent disposition of a parolee upon conviction of a crime while on parole, *170 provided the courts with considerable litigation. Chernachowicz v. State, 39 N.J. Super. 571, 574 (App. Div. 1956), affirmed 22 N.J. 83 (1956), certiorari denied 352 U.S. 897, 77 S.Ct. 136, 1 L.Ed.2d 89 (1956). See also State v. Parker, 15 N.J. Super. 412 (App. Div. 1951); In re Macejka, 10 N.J. Super. 393 (Cty. Ct. 1950). Its passage has undoubtedly produced a greater uniformity in the treatment of parolees in cases involving the subsequent commission of a crime. See Chernachowicz v. State, supra; State ex rel, Kincaid v. State Parole Board, 53 N.J. Super. 526 (App. Div. 1959); Lipschitz v. State, 43 N.J. Super. 386 (App. Div. 1957). Cf. Donnelly v. New Jersey State Parole Board, 91 N.J. Super. 302 (App. Div. 1966). However, regardless of whatever effect the statute may have in prescribing and limiting the power and discretion of the State Parole Board in the performance of its duties relative to parole, or in providing the courts with guidelines for the disposition of a prisoner upon the completion of his service of a sentence for a crime committed while on parole where the sentencing court has not otherwise explicitly provided, we are convinced that the statute was not intended to and does not divest a court charged with the duty of sentencing a defendant for such subsequent crime of its inherent power to impose such sentence as it may in its discretion consider just to the individual and adequate for the protection of society. While the duty of determining questions of parole devolves upon the State Parole Board, the power of imposing sentence as a correctional measure, and the determination of how the public interest will best be served thereby, lies with the judiciary. See State v. Moore, 21 N.J. Super. 419, 422 (App. Div. 1952). Cf. State v. Ivan, 33 N.J. 197 (1960). This power encompasses the discretion to make the sentence consecutive to or concurrent with that remaining to be served on a prior sentence for breach of a condition of parole. That the Legislature did not intend otherwise by the statute is indicated by the language "no part of a sentence * * * shall be deemed to be served * * *." (Emphasis added.) *171 This is constructional, not mandatory language. In other words, absent a contrary direction by the sentencing judge, a sentence for a crime committed while on parole shall be deemed (e.g., by the parole and prison record-keeping officers) to be served separately from service of the incomplete sentence on which parole was previously granted. None of our previous decisions construing the statute are to the contrary.
We therefore conclude that the original (December 5, 1967) sentence of 3-5 years in State Prison which provided for its concurrent service "with the balance of any term to be served by defendant * * * on a parole violation now pending against him" was valid. As noted above, in the absence of such a direction in the sentence, the statute would have been controlling and defendant's term for violation of parole would have been consecutive to service of the term imposed by the court. It follows that the sentence originally imposed, representing the judge's conception of an appropriate exercise of sentencing discretion, should be reinstated.
We have reviewed defendant's remaining contentions and find them to be without merit. The manner of his identification by Hannon was not so unfair, suggestive or unreasonable as to amount to a denial of due process. State v. Matlack, 49 N.J. 491 (1967), certiorari denied 389 U.S. 1009, 88 S.Ct. 572, 19 L.Ed.2d 606 (1967); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); State v. Woodard, N.J. Super. (App. Div. 1968). His sentence was well within the statutory limits and we find nothing to indicate that it resulted from a mistaken exercise of the court's discretion. State v. Gibbs, 79 N.J. Super. 315, 324-326 (App. Div. 1963).
Reversed and remanded for disposition in conformity with this opinion.