272 So.2d 271

Elva Lee MASSEY

v.

STATE.

6 Div. 131.

Court of Criminal Appeals of Alabama.

Oct. 17, 1972.

Rehearing Denied Nov. 21, 1972.

William J. Baxley, Atty. Gen., and Herbert H. Henry, Asst. Atty. Gen., for the State.

Tarter & Wininger, Birmingham, for appellant.

PER CURIAM.

The indictment charged the appellant with murder in the first degree. The person alleged to have been killed is named in the indictment as Peggy Fetner Bradley Massey. The appellant entered a plea of not guilty. Trial was had and resulted in a verdict of guilty of murder in the second degree and fixing her punishment at 20 years imprisonment in the penitentiary. Judgment was duly entered by the trial court in accordance with the verdict. The appellant filed a motion for a new trial which was overruled. Hence this appeal.

The evidence offered on behalf of the State tended to show that the appellant and James Massey had been married and divorced; that a child of said marriage, James Massey, Jr., was in the custody of ap-

pellant; that on the date of killing in question, the said James Massey, Jr. took some of his personal property and left the home of his mother, the appellant, and went to the home of his father who was the husband of the deceased, Peggy Fetner Bradley Massey; that appellant went to that home to get her son and bring him back to her home; that an argument took place between appellant and the deceased and James Massey, Sr. concerning the boy; and that appellant shot and killed James Massey, Sr. and Peggy Fetner Bradley Massey. The other evidence in the case so far as necessary for this opinion will be stated in the course of this opinion as necessity to do so arises.

The killing involved in this case took place at the back door of the home of the deceased or in the hall of the second floor of said home. The home was located on a hill which sloped toward the front of the house. The front door of the house was an entry to the first floor and the back door was an entry to the second floor. A diagram of the house was admitted in evidence. A number of pictures showing the scene in and around the back door and in the house were also admitted in evidence. Two people were killed on the occasion in question. Some of the pictures were taken before the bodies were removed from the premises. Some of the pictures were taken of the appellant's car parked near the back door and reveals the contents of the area of the front seat of that car. These were taken within a very short time after the killing and before appellant's car was removed from the scene.

The appellant also offered a series of pictures in evidence. These pictures were designed to show a reenactment of the events, as testified to by appellant, prior to and leading up to the moment of the fatal shot. They were taken sometime after the killing. These pictures have people in them acting out or endeavoring to demonstrate what the appellant claims happened at the time in question. The trial court sustained objections to their admission in evidence. The appellant complains that the trial court erred in failing to allow those "reconstruction" pictures in evidence.

These pictures are clearly an effort to present a demonstration of conduct and action on the part of the different people involved in the killing either as a participant or as a witness. In the case of State v. 2147 Pounds of Packing Stock Butter, 29 Ala.App. 607, 199 So. 739, it is stated:

"Considerable latitude of discretion is accorded to the nisi prius court in the conduct and regulation of trials. It is within the discretion of the trial court to permit or refuse to allow experiments, demonstrations, or tests to be made * * *."

International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, C. I. O. et al. v. Russell, 264 Ala. 456, 88 So.2d 175, was a case in which motion pictures, taken at intervals, and an objection was made to their admission on the ground that said films did not show a continuity of action and was therefore misleading and inadmissible. In that case, the motion picture was admitted in evidence, however, the court stated:

"The determination of the sufficiency of the preliminary proofs offered to identify the photograph or to show that it is an accurate representation of the objects which it purports to portray is a matter within the sound discretion of the trial court and will not be reviewable except for gross abuse. McKee v. State, 253 Ala. 235, 44 So.2d 781.

"It is likewise a matter for the trial court in the exercise of his sound discretion to determine whether the motion picture will aid the jury or tend to confuse or prejudice the jury." (citing many cases)

In Godwin v. Jerkins, 282 Ala. 11, 208 So.2d 210, the court said:

"Appellant next urges error in that the trial court refused to allow in evidence photographs of the plaintiff's automobile admittedly taken some time after the ac-

cident, after the automobile had been taken to Monroeville. The witness testified that the pictures were taken some week and a half after the accident, and after the automobile had been carried to the Ford place in Monroeville. The pictures are before us and we agree with the trial court that they do not depict the condition of the automobile immediately following the accident. There are several pieces of twisted metal lying about, completely dismantled from the body of the automobile.

"In any event, the rule of this state is to the effect that the determination of the sufficiency of preliminary proofs offered to identify pictures and to show that such pictures accurately represent what they purport is a matter within the sound discretion of the trial court and his decision on sufficiency of the predicate so laid will not be reviewed by an appellate court except for abuse. It is a matter for the trial court in the exercise of his sound discretion to determine whether a photograph offered in evidence will aid the jury or tend to confuse or prejudice the jury." (citing many cases)

The still pictures offered in the case at bar, taken in sequence and at intervals, when viewed in that order, were designed to show motion and action, but they show only one position in each picture. They show none of the action between the pictures. One position or one motion leaves out much of the context in which it is set. The trial judge in the exercise of his discretion could well be of the opinion that it over-emphasizes and gives added prominence to a single act or motion and that it would confuse or prejudice the jury. Without question, such pictures show less than a motion picture taken at intervals. Motion pictures show all acts within the pictures over an interval of time, but the still picture shows only one position out of many positions of a single motion. When taken by a party in interest or on such party's behalf, one could well believe that it

would show the most damaging part of such motion. The motion picture in the International Union, United Automobile Aircraft and Agricultural Implement Workers of America, C. I. O. et al., case, supra, comprised pictures of actual events as they took place. The pictures in the case at bar were a demonstration and the actors therein were performing that which they did not see on being prompted only by hearsay. What better way could be found to testify in court to what someone else has told you?

The trial judge did not abuse his discretion. There is no error in that respect.

■ The record disclosed that during the argument of counsel for the appellant to the jury the following occurred:

"MR. MCDONALD: We object. We could not have brought it. If he wants to reopen the case, we will be glad to bring plenty of evidence.

"THE COURT: I sustain the objection to that type argument.

"MR. MCDONALD: We offer to bring in that type of evidence.

"THE COURT: I sustain the objection.

MR. MCDONALD: Would you ask the defendant if she wants to bring in that type evidence? It is not too late.

"THE COURT: No, I will not do that."

That is all the record shows with reference to that incident. No exception was reserved by appellant to the ruling of the trial court in connection with the above. We do not find anything in the record to indicate that appellant made any effort to correct the record or to make it speak more fully. There are statutory means of doing so.

Counsel for the appellant, in brief filed, states in an apparent reference to the above excerpt from the record:

"It is clear that where a witness has testified and no testimony has been offered

by the opposition to prove the bad character of the witness then it may be argued properly to the jury that the witness must have a good reputation because of the opposing party's failure to introduce evidence to the contrary."

We cannot substitute the brief of counsel for the appellant for the record. The record does not show what the argument objected to was about.

In the case of Flowers v. State, 269 Ala. 395, 113 So.2d 344, the court said:

"We have held that where the argument of one's counsel passes beyond the bounds of legal propriety, it is the duty of opposing counsel to object specifically, and point out substantially the language deemed objectionable; and the record should disclose with reasonable certainty what was said in the court below, in order that the appellate court may review it. Mincy v. State, 262 Ala. 193, 78 So.2d 262; Stephens v. State, 250 Ala. 123, 33 So.2d 245; Ferguson v. State, 36 Ala.App. 358, 56 So.2d 118. * * *"

See also Sullivan v. State, 23 Ala.App. 10, 119 So. 243; and Housing Authority of the City of Decatur v. Decatur Land Co., 258 Ala. 607, 64 So.2d 594, 597. The objection in the instant case does not meet these requirements. There is no error in that respect.

█ The appellant complains that the trial court erred in not allowing individual questioning of jurors at the time the jurors were being qualified. Counsel for appellant filed a written motion in and by which he moved that the court enter an order allowing counsel for the appellant to strike the jurors in the appellant's case by examining each individual prospective juror one at a time as to their competency to serve as jurors and to inquire into possible bias and prejudice on the part of said prospective jurors. On the hearing of said motion, the record reveals the following:

"MR. TARTER: All right, we except. We have another motion, if Your Honor please.

"THE COURT: All right.

"(Thereupon, ensued an off-the-record discussion, following which the following proceedings were had and done:)

"THE COURT: Gentlemen, let me say this: I have never not let anybody get all the information they needed to from the jury, but I have never permitted the business of taking juror by juror and asking each juror separately and individually, because I am aware, both as an attorney and as a judge, that this information can be adequately elicited by questioning the entire panel of jurors first generally, and, certainly, in almost every instance, if it becomes necessary, to ask each juror specific questions. That is the way I have always done it, and, up to now, I know of no decision saying I have to change it. The business of taking each juror one right after another, and asking each one of them the same general set of questions, I am not going to permit, but you may ask your general questions, and in any instance where it becomes necessary—in short, I won't permit you to say it would become necessary in every case.

"MR. TARTER: I wouldn't say this helps for me to render effective assistance as counsel in this case, without being able to review or question each individual juror as to any questions which I have prepared relating to issues in this case which will be brought out and which are necessary in the preparation of the defense for the defendant, and it is impossible for me to be a competent counsel for the defendant under these circumstances.

"THE COURT: You may ask your questions of the entire panel as effectively as you can, if they are. I am not

limiting you as to the amount of questions you may ask, but I am not permitting you to go over the questions with each juror. If you want to ask general questions of the entire venire, or ask specific questions of the entire venire, you may. I don't rule on grounds in advance, because you don't know what will be required. It always develops, under certain circumstances, that certain jurors may want to be asked specific questions. I want you to know I am well aware some of you lawyers have been wanting to get this in the record. You just get it in, and let's not have any loose matters. Someday it may be changed, but you know the trial court is not going to change it until the appellate court tells us we have to. We might as well get it in the record without piddle paddling around with it.

"MR. TARTER: I am not trying to piddle paddle. I am just trying to represent my client in what I feel to be an important part of the trial in the selection of the jury. We feel like it is important, and it is impossible for us to render assistance without—we are not talking about stereotype questions of each individual juror.

"THE COURT: As your motion is stated, I overrule the motion. As I say, I think you are aware of what I tried to say about it, because you have tried many cases before me, but I am asking you now to make—I am not attempting —I am merely saying, if we are going to have any objections, I think it is perfectly—we are perfectly capable of getting it on the record now, so that everything will go smoothly. I know what you are doing, and you do, and the counsel for the State knows. I am going to bring quite a few extras in here, and, so as not to have them sitting here hour after hour—

"MR. TARTER: The way you refer, I got the impression I hurt your feelings. All I said was, I did not intend to antagonize you. What I am trying to do is to represent my client, but I do want to state in the record that it is impossible for me to render effective assistance to my client in this case without an opportunity to question the panel, in view of the fact that it is a secret venire, and I never received a copy of it until 10:30 or 11:00 o'clock this morning. I think you know me well enough to know that I have never intentionally disregarded one of your rulings. The time to test that is in the appellate court.

"THE COURT: Yes, sir.

"MR. TARTER: But I do want to get what I want to say in the record before we get to striking a jury, so that Your Honor will be aware of the fact that I am not going to disregard your rulings. I have never done it, and I never will.

"THE COURT: In individual instances where the circumstances require that you should go into individual questions with particular jurors, you may do so. In California, for example, they take three or four weeks to strike a jury by questioning each juror hours on end.

"MR. TARTER: Except me, Your Honor."

In the case of Burns v. State, 226 Ala. 117, 145 So. 436, it is stated:

"The court had qualified the jury and refused to allow counsel to cross-examine or interrogate each juror personally. The statute placed the right 'to examine said jurors as to any matter that might tend to affect their verdict * * * under the direction of the court,' a matter largely within the discretion of the court. In this there was no error. The court qualified and empaneled the jury in groups of twelve, and counsel were allowed to interrogate the respective groups of jurors, and no special interest or disqualification was disclosed to the court as the basis of the request for or the purpose of an individual inquiry. Section 8662, Code; Rose v. Magro, 220 Ala. 120, 123, 124 So. 296; Alabama

Clay Products Co. v. Mathews, 220 Ala. 549, 551, 126 So. 869."

In Aaron v. State, 273 Ala. 337, 139 So. 2d 309, 311, the court said:

"The jurors, regular and special, were sworn, and they were called to the rail in groups of 5, 7, 10, 12, 15 and 17. Each group was questioned as to his qualifications and the trial court then asked them thirty-three questions which had been furnished him by appellant.

"One point raised in brief was that the court erred in qualifying the jury in groups. In Burns v. State, 226 Ala. 117, 145 So. 436, this court approved qualifying and impaneling the jury in groups of twelve, and in Untreiner v. State, 146 Ala. 26, 41 So. 285, in groups of six. The trial court committed no error in the instant case by qualifying the jury in groups.

"Appellant sought to 'personally interrogate each prospective juror.' The court refused to permit this, but stated that the court would ask any questions for appellant. Counsel for appellant stated then, and here on oral argument, that it has long been the practice in the Circuit Court of Montgomery County for the court to ask all of the qualifying questions. However, when any juror would answer any question in such a way as to indicate any bias or interest, counsel for appellant was permitted to personally interrogate that particular juror as to the details. * * *

. . . . . .

"Title 30, § 52, Code 1940, provides:

" 'In civil and criminal cases, either party shall have the right to examine jurors as to their qualifications, interest, or bias that would affect the trial of the case, and shall have the right, under the direction of the court, to examine said jurors as to any matter that might tend to affect their verdict.'

"It is the rule of our cases that the limit of voir dire examination is left much to the discretion of the trial court, and we do not think the circumstances here show an abuse of that discretion. Sims v. Struthers, 267 Ala. 80, 100 So.2d 23; Redus v. State, 243 Ala. 320, 9 So.2d 914; Dyer v. State, 241 Ala. 679, 4 So. 2d 311; Gholston v. State, 221 Ala. 556, 130 So. 69; Rose v. Magro, 220 Ala. 120, 124 So. 296."

In the case at bar the trial court stated in substance that if any juror gave an answer that would call for more information, that counsel would be permitted to ask other questions of that particular juror. That method of examining the jury was followed in this case. The circumstances do not show that the trial court abused its discretion in the manner and method by which the jury was qualified. Appellant's complaint is without merit and we find no error in the ruling of the court in connection with the qualification of the jurors.

■ The appellant complains that the trial court erred in failing to charge the jury on self defense. The oral charge of the trial court did not include any instructions of self defense. Upon the conclusion of the oral charge to the jury, both the state and counsel for appellant stated they were satisfied with the oral charge. The appellant did not request any written charges and no written charges with respect to self defense were refused.

In Moates v. State, 40 Ala.App. 234, 115 So.2d 277, cert. denied 269 Ala. 698, 115 So.2d 282, it is stated:

" * * * A party cannot except to matter omitted from a court's oral instructions to the jury. Tranholm v. State, 38 Ala.App. 57, 77 So.2d 491. Further, exceptions to the oral instruction of the court must be taken before a jury retires, or they will not be considered. * * *"

There was no such exception in the case at bar, under the facts and circumstances of this case, error does not appear in that respect.

■ Appellant contends that the trial court erred in allowing a threat to be proven wherein the alleged threat was by the appellant to someone other than the victim. Appellant really claims the threat was made against someone other than the victim. We have searched the record for such threats and the proof thereof. We find that the appellant's son, who lived with his mother after the appellant and his father were divorced and who had left his mother's home the day of the killing and gone to his father's home with the apparent intent to live with his father and his wife, testified that his mother, appellant, told him that if he went over there to live with them, she would kill them. In this case, the appellant was on trial for the murder of Peggy Fetner Bradley Massey, who was, prior to her death, the wife of the father of this witness and therefore one of the people mentioned in the threat. That threat was clearly admissible. Tennison v. State, 183 Ala. 1, 62 So. 780; Shikles v. State, 31 Ala.App. 423, 18 So.2d 412, cert. denied, 245 Ala. 641, 18 So.2d 417.

■ Appellant further complains that the trial court erred in ordering defense counsel to let a witness read a transcript of preliminary hearing in order to refresh his recollection. Counsel for appellant was using the transcript to question the witness and was making an effort to show that his testimony was in conflict with his testimony on the preliminary hearing. In brief, appellant states that the transcript of the preliminary hearing being used was not certified as being correct. He did not so inform the trial court.

In Parker v. State, 266 Ala. 63, 94 So.2d 209, the rule is stated in this manner:

"The appellant argues that it was reversible error for the court to permit the solicitor to cross-examine the defendant from a paper that purported to be a written transcription of a tape recorded statement made by the defendant to police soon after the fatal shooting.

"An analysis of the cases relied on by the appellant shows that they are not controlling in the factual situation in the case at bar and that the trial court was not in error. The cases cited in brief by appellant control where the statement was written by the witness or was signed by the witness or it was prior sworn testimony of the witness. In these three situations if the statement is to be later introduced in evidence to impeach the witness, the statement must be first shown to the witness in order to allow the witness to refresh his memory and to explain any inconsistency. * * *"

In the Parker case, supra, the ruling of the trial court was held to be without error because the writing was not later admitted in evidence for the purpose of impeaching the witness nor was the paper authenticated in any manner by the defendant as being a prior statement made by him. He did not write the statement. He did not sign the statement nor was the alleged statement shown to be sworn testimony of the defendant previously given.

In the case at bar the transcript contained the sworn testimony of the witness previously given and comes within the rule requiring that it be shown to the witness. The ruling of the trial court with reference thereto is without error.

■ The appellant complains on this appeal that the trial judge on several occasions commented on the evidence and allowed the district attorney to comment prejudicially in the presence of the jury. The appellant in brief cited several pages of the record which appellant claims shows such comment. We have carefully read this record and we do not agree with the complaint. We do not find that the court commented on the evidence. Some of the instances cited dealt with rulings by the court on the admissibility of evidence; some involved statements by the court of what a witness then testifying had said without any comment as to whether it was

true or false or its effect; others were merely questions by the court to a witness, and statements that questions were confusing or that the witness may be confused. One of the instances complained of was merely an effort on the part of the trial court to get counsel for appellant to be seated and to be in order; all of which is completely permissible under the law.

However, there was no objection by appellant on any of the occasions complained of to anything the court did or said; and, therefore, there is nothing in that respect for this court to review. The same thing is true with reference to any statement or comment made by the district attorney during the taking of the evidence.

We have searched the record and find no error therein. Therefore, the judgment appealed from is

Affirmed.

All the Judges concur.