307 So.2d 86

Jerome **LOWE**

v.

**STATE.**

**3 Div. 211.**

Court of Criminal Appeals of Alabama.

Nov. 26, 1974.

Rehearing Denied Jan. 21, 1975.

James E. Hart, Jr., Brewton, for appellant.

William J. Baxley, Atty. Gen., and Otis J. Goodwyn, Jr., Asst. Atty. Gen., for the State.

HARRIS, Judge.

Lowe was convicted of the offense denounced by Section 374(20), Title 14, Code of Alabama 1940, which makes it a felony to commit an assault with a deadly instrument upon a peace officer or other law enforcement officer of this state engaged in the active discharge of his lawful duty or duties.

Prior to arraignment and trial appellant was found to be indigent and counsel was appointed to represent him. He pleaded not guilty. The jury returned a verdict of guilty and the court sentenced him to a term of eight (8) years in the penitentiary. He was furnished a free transcript and trial counsel was appointed to represent him on appeal.

Omitting the formal parts, the indictment reads as follows:

"The Grand Jury of said County charge that before the finding of this indictment Jerome Lowe did unlawfully commit an assault with a deadly weapon, viz: a knife or other sharp instrument, upon Luther F. Fails, a law enforcement officer of the State of Alabama, viz: A Correctional Officer of the William G. Holman Unit, while the said Luther F. Fails was engaged in the active discharge of his lawful duty or duties, against the peace and dignity of The State of Alabama."

On December 8, 1971, appellant and one Joseph Smith were inmates of the Holman Prison Unit at Atmore, Alabama. They were confined in the segregation unit of

the prison referred to as 5–D Lockup. Appellant had a long string of felony convictions including four burglaries in Etowah County and one robbery conviction in 1966 and had been in prison on the robbery conviction since that year. Smith was also a repeater with two robbery and two grand larceny convictions in Jefferson County. Prior to appellant's trial on the instant indictment Smith had been convicted for the identical offense for which appellant was on trial.

On December 8, 1971, Mr. Luther F. Fails and Mr. Roy Lee were correctional officers employed at Holman Prison. Mr. Fails had been with the prison system twenty-one years and Mr. Lee had two years service.

At approximately 2:00 P.M. on the date of this offense, Mr. Fails and Mr. Lee were instructed to remove all prisoners from the segregation unit of 5–D and escort them to the exercise yard. Lowe was in Cell 14 and Smith was in Cell 12. It was a rule of the prison that before any prisoner in the segregation unit could be removed from his cell he was required to remove all of his clothing and pass it through the cell bars to the correctional officers to be searched for weapons. Mr. Fails searched Smith's clothing and found no weapons and Mr. Lee searched Lowe's clothing and found no weapons. Their clothing was passed back to these convicts through the bars and they dressed just outside the open cell doors. Just as they were fixing to leave their cells, Mr. Lee saw Lowe reach back in his cell and get a knife or dirk. Neither officer saw Smith get a knife but he got one. Lowe grabbed Mr. Fails around his neck and stuck him in the left back side of his body. At the same time, Smith attacked Mr. Lee and cut him four times. Mr. Fails hollered to Mr. Lee, "He's got me and he has a knife." Lowe pushed Mr. Fails up against the wall and Mr. Fails managed to get his billy club and raised it above his head. Lowe said, "Drop it", and Mr. Fails hesitated and Lowe said, "You —— —— —— —— I said

drop it. I'm gonna kill you you —— —— —— ——. You are a dead —— —— —— —— if things don't come out right."

In the meantime, Mr. Lee called for help and a "flunky" convict came to his rescue and got Smith off of him and Mr. Lee ran out of the cell block. He went to the hospital where he remained for eleven (11) days.

After Mr. Lee left Smith went to Lowe and told him, "You be ready to kill that —— —— —— —— if any of them start in that grill door up there."

Lowe said they wanted to talk to the Governor and the Commissioner about certain prison conditions. The convict who separated Smith and Mr. Lee went to get Warden Capps and a deputy commissioner who was at Atmore on this occasion. They and other prison officials came to the cell block where Lowe was still holding Mr. Fails by his shirt collar. Mr. Capps talked the convicts into giving themselves up and surrendering their knives.

Both Lowe and Smith testified for the defense. Both denied they were in possession of knives or that they attacked and cut the prison officers. They said the officers made an unprovoked attack on them with billy clubs calling them "smart niggers and —— —— ——." Several other convicts testified for the defense. Some said they saw the officers attack Lowe and Smith with night sticks and others said they were not in positions to see the fight but they heard the officers beating on these convicts.

Appellant assigns four errors upon which he predicates error to reverse:

1. In failing to grant appellant's motion to exclude the state's evidence for failure to prove the offense charged in the indictment.

2. The remark of the trial court, in the presence of the jury, that appellant and Smith acted in concert in the case.

3. The refusal of the trial judge to orally charge the jury in connection with lesser included offenses of the charge in the indictment.

4. The refusal of appellant's written charges for acquittal and lesser included offenses of the charge in the indictment.

Under the first assignment of error, appellant contends that his motion should have been granted for the simple reason that a correctional officer of the Alabama Board of Corrections is not a peace officer within the meaning of Title 14, Section 374(20), Code of Alabama 1940.

■ The above section was enacted into law on September 8, 1967. The Legislature did not intend this section to be a duplication of Title 14, Section 38, Code of Alabama 1940, but intended to create a new offense for the protection of peace officers, and other law enforcement officers in which "malice", "intent", and words of similar import are conspicuously absent. This section, unlike section 38, supra, requires the use of a *deadly instrument*. McKinney v. State, 50 Ala.App. 271, 278 So.2d 719.

Title 14, Section 374(19), Code of Alabama 1940, deals with a simple assault or assault and battery upon a peace officer or other law enforcement officer of the state while engaged in the discharge of his duty or duties which is a misdemeanor. If a "deadly instrument" is used the misdemeanor section has no application. Therefore, Section 374(19), is not a lesser included offense in prosecutions under Section 374(20), supra, where a "deadly instrument" is used to commit the offense.

While a correctional officer *may not* have authority to make an arrest for criminal violations away from the premises of our prisons in Alabama, he is clothed with complete authority to arrest inmates who commit crimes in prison and on properties under the control of the Alabama Board of Corrections.

■ We hold that Mr. Fails and Mr. Lee were "peace officers or other law enforcement officer(s)" engaged in the active discharge of their lawful duties at the time they were assaulted and stabbed by Lowe and Smith.

With reference to appellant's contention that the trial court made an unlawful comment upon the evidence, we quote from the record:

"MR. HART: Your Honor, I have one request of the Court. I would request that the Court instruct the jury that this charge is only against Jerome Lowe for assault with a deadly weapon upon a peace officer against Luther F. Fails. I think Mr. Henderson's closing argument to the jury left some doubt as to who exactly is being tried for what here today. Now, there wasn't any evidence— the state didn't introduce any evidence proving any kind of conspiracy in this case. Only thing the state introduced— all their testimony was that this all was one transaction. But the state didn't introduce any testimony concerning any kind of conspiracy on the part of Joseph Smith and Jerome Lowe and I would request that the Court instruct the jury that they're only to consider this indictment against Jerome Lowe for an assault with a deadly weapon upon a law enforcement officer in this case, Luther F. Fails.

"MR. HENDERSON: Your Honor, this is the combination between the action of this man as well as the Joseph Smith Your Honor. He cannot be legally separated.

"MR. HART: They are legally separated.

"THE COURT: Let's not have any further arguing. I overrule the motion and I so instruct the jury. I think these gentlemen acted in concert in this case. The evidence is in; the evidence is for this jury, Mr. Hart, to determine what happened out there on this occasion."

■ Laying aside the question whether the trial court commented on the evidence in this case, we are unable to reach the point as appellant did not object to the statement of the court. Massey v. State, 49 Ala.App. 345, 272 So.2d 271, certiorari denied, 289 Ala. 747, 272 So.2d 278.

■ The trial court charged the jury, in pertinent part, as follows:

"Now, you have a duty in a case of this type and I have a duty. Mine is to rule on the admissibility of evidence, on the propriety of the arguments presented to you, on maintaining the order and decorum in this courtroom in order that you might hear the evidence that the state has brought here and the defense. And you have a separate and distinct province, you are the sole judges of the facts and the weight and the sufficiency of the evidence is for you, the jury, alone. All questions of fact are to be determined by you and it is not for this judge to give you instructions as to any matters of fact. In you capacity as the triers of the facts you are supreme and no mortal man can touch your judgment. On the other hand, it is the exclusive province of this court to determine all questions of law arising in the case. As you know I had to send you out at least once in order that questions of law might be argued to the court. The judge must declare the law and not leave it to the jury. It is the duty of the judge to make a plain statement of the law that he feels is applicable in each case and it is the duty of the jury to follow the law as given and charged by the court. I have no opinion as to the facts in this particular case or any case that might be tried this week. It is not my business to have an opinion. And even if I did have an opinion it would be highly improper for me to intimate or suggest what that opinion might be to you. The determination of the facts does not come within my province. That is your exclusive province, for you are the sole judges of the evidence and it is of the highest importance and administration of justice that our provinces be kept separate. So, bear in mind Ladies and Gentlemen that the weight and sufficiency of the evidence in this case is for you, the jury, and not for the court to determine."

No reversible error appears in regard to this comment of the court.

■ The court gave the jury four requested charges in writing and refused three. The refused charges contained a number of misspelled words, (though perhaps merely typographical errors) and were otherwise confusing and misleading, and were properly refused. McDonald v. State, 165 Ala. 85, 51 So. 629; Mincey v. State, 247 Ala. 665, 25 So.2d 777.

Affirmed.

ALMON, TYSON and DeCARLO, JJ., concur.

CATES, P. J., concurs specially.

CATES, Presiding Judge (concurring specially):

To me, in ascertaining the meaning of "any peace officer or other law enforcement officer," we should look first to the statute which created this special crime. If not there enlightened we should go to a dictionary or other source of what is commonly intended by the man on the street. In this search, I would not use other statutes unless it is clear that the Legislature is not therein using its plenary power of defining to create a new or expanded meaning for a word.

In Towne v. Eisner, 245 U.S. 418, 38 S. Ct. 158, 62 L.Ed. 372, it was claimed that "income" in the Sixteenth Amendment and in the Income Tax Act were one and the same. Mr. Justice Holmes did not accept this as a universal verity, saying:

"* * * A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly

in color and content according to the circumstances and the time in which it is used. * * *."

Again, in Lamar v. United States, 240 U.S. 60, 36 S.Ct. 255, 60 L.Ed. 526, we find:

"* * * The question is in what sense the word 'officer' is used in the Criminal Code * * * The same words may have different meanings in different parts of the same act, and of course words may be used in a statute in a different sense from that in which they are used in the Constitution."

The crime here in question is denounced in § 3 of Act No. 746, September 8, 1967. Said Act [also set out in the 1973 Pocket Part Supplement of Michie's unofficial 1958 Code as T. 14, §§ 374(18)–(20)] contains no definition of the expression "peace officer or other law enforcement officer."

I cannot agree that Act No. 1981 of September 20, 1971, as amended by Act No. 1115 of September 17, 1973 [Michie's unofficial Code, supra, T. 55, § 373 (103)] is relevant—mainly because the Legislature (1) used the omnium gatherum "includes"[1] and (2) did not refer to *employees* of the Board of Corrections. The Board of Corrections not being a corporate body, I think the reference in that Act is to board members alone.

The expression "peace officer" used in Act No. 208 of August 16, 1966, as amended, is overbroad in that it "includes" all employees of the department of corrections and institutions. This could embrace not only prison guards but also stenographers, file clerks, auditors, computer programmers and other office workers, as well as the custodians of the convicts.

The latter category I do consider to be within § 3 of Act 746, supra, of instant concern. However, I reach that conclusion by slightly different reasoning from that used by my Brother Harris. Instead, I would rely on the language in State v. Grant, 102 N.J.Super. 164, 245 A.2d 528, wherein the court says:

"Defendant first urges that an Essex County Penitentiary correction officer is not a 'law enforcement officer' within the intendment of N.J.S. 2A:90–4, N.J.S.A. The functions and responsibilities of correction officers performing the duties described above, are such that we are unable to agree with defendant's contention. Whether those performing such duties bear the title of jail guard, warden or correction officer, overseeing the custody and punishment of law violators is as much a part of law enforcement as undertaking the detection and apprehension of such violators. Moreover, they have the further duty of detecting and preventing violations of law by prisoners, e. g., assaults on other prisoners, escapes, etc., and in that sense are literally law enforcement officers. * * * We are satisfied that the Legislature intended to encompass within the scope of the statute those persons whose duty it is to supervise the administration of criminal punishment and to maintain security within and without the confines of the State's penal institutions. We find no basic in logic or reason for limiting the meaning of the term "law enforcement officer" to persons empowered by law to investigate, arrest and prosecute violators of the law, as urged by defendant. * * *"

I have only written to such length because I think it's elemental that penal statutes must be strictly construed. If the instant statute applied only to "peace officers" I might have voted to reverse. However, I do think that prison guards are "law enforcement officers," particularly since it is their duty to force the convicts to obey and endure the sentence of the law.

1. "Include" is ordinarily a word not of limitation, but of enlargement. Sims v. Moore, 288 Ala. 630, 264 So.2d 484. This is also a principle of statutory construction. North Carolina Turnpike Auth. v. Pine Island, Inc., 265 N.C. 109, 143 S.E.2d 319.

The Legislature undertook to punish for this species of aggravated assault. I do not consider that the classification is unreasonable. These wardens, for low pay and grudging recognition, risk life and limb certainly as often as constables, sheriffs and policemen.

## ON REHEARING

HARRIS, Judge.

The opinion issued November 26, 1974, has been corrected by deleting the reference to Title 55, Chapter 11A, Section 378(2) et seq., Code of Alabama 1940. The quotation of the definition of "Peace Officer" has also been eliminated for the reason that the definition there set out was for the express purpose of naming those persons entitled to death benefits when the named persons were killed in the performance of their duties.

With respect to the penal provisions of Title 14, Section 374(20), this extended opinion agrees with the specially concurring opinion of Presiding Judge Cates. This is not meant to concur with the reservation in that opinion as to what the decision would be if the above section applied only to "Peace Officers".

Opinion extended and corrected.

Application overruled.

All the Judges concur.