SIMMONS, Retired Circuit Judge.
Appellant, an indigent, was indicted for assaulting Tommy Mullis, a police officer of the city of Dothan, Alabama, while on active discharge of his lawful duties, with a deadly weapon, to-wit: a shotgun.
The verdict of the jury reads:
“We, the jury, find the Defendant Debra Ann Smith, guilty of assault on a police officer with a deadly weapon as charged in the indictment.”
The trial judge fixed punishment at eight years imprisonment in the penitentiary.
We will briefly state some of the facts as appear in the record. It is to be noted that the defendant did not put on any witnesses, nor did she take the stand and testify.
Officer Tommy Mullis, a police officer with nine years service, testified that while he was on duty patrolling in a police van he received a dispatch to go to the intersection of Apple Tree and Boone Alley where a fight was taking place. When he arrived, Officer Charles Merrow was there, and the alleged fight was over. However, the defendant, who reported the fight between her mother and an uncle, was present. The defendant reported that the parties, her mother and uncle, were over behind a building, and she “wanted us to go over there and get them.”
Responding to her request, both officers went back of the building on the street corner and found the mother in an extremely intoxicated condition. She had blood on her face, and she was in a very belligerent mood. Officer Mullis testified that he talked to her and determined that she had been in a fight and was one of the causes of the trouble.
“Q. And at this point, what happened?
“A. She [defendant] was telling her mother about how she shouldn’t have done it and she called the police to straighten her out and that we were going to do it. So we decided at that point that we would arrest her [the mother].”
As Officer Mullis was leading the mother by the shoulder and walking toward the van, “not giving me any trouble,” he heard something about a bottle. As he turned around, he saw a 32 oz. Coca-Cola bottle “swinging through the air at the back of the head of Charles Merrow.” The defendant had the bottle. At that point, as he turned around, she lost control of the bottle (or threw it down) and ran up and hit Mullis in the face with her fist. The officer then grabbed her and told her she was under arrest for assault and battery. Officer Mullis stated he did not know what became of the mother and did not remember seeing her again.
Officer Mullis further testified that, as he was trying to take defendant to the van “to put her in it because she was still swinging and cursing me and everything else, and the crowd was beginning to gather,” he had his shirt tom off, lost his hat, and has not found it to this day. He said that Officer Merrow was standing there trying to keep the crowd “off me because there was about seventy-five people gathered around within three or four feet of us, all around, hollering, giving cat calls.” Merrow was not successful. We quote:
“Q. Was he successful in keeping the crowd off of you?
“A. Not one hundred percent, no, sir. Several of them would get to me on occasion. I couldn’t get control of her to get her into the paddy wagon. Every time I would get to it, they would put their arms on my shoulder and drag me back away. And when she got loose from me and ran into the crowd and, you know, said let’s get them, then she jumped back at me, and when she did I grabbed her.
“Q. And what did you do when you grabbed her that time?
“A. I was trying to hold on to her and still walk sideways to the back of the paddy wagon. And she latched her teeth on to my underarm here (indicating).
“Q. What did she do?
*352 “A. She bit me, and she was still tussling.
“Q. Then what happened?
“A. I think it was about at that time that I hollered for Charlie Merrow to call some help. And then the crowd closed in on us, and I backed up against the back of the van with my arms around her like this (indicating), holding her, waiting for help to get there.
“Q. How long did it take for help to get there?
“A. Oh, about two, three minutes. She was making threats that she was going to kill me. Said I’m going to kill your whole goddamn family.”
It appears that about then officers came to help. After getting defendant in the back of the van (she was not handcuffed) and while en route, she broke a quarter-inch thick Plexiglas window in the partition between the front seat and the back. She grabbed a shotgun from a rack over the front seat and aimed it at the torso of Officer Mullis. Alone in the front seat, she threatened to kill him. The gun was a twelve gauge Smith and Wesson pump shotgun loaded with four buckshot shells in the tube. Mullis said the gun was in her hands, “and the barrel was aimed right here (indicating), straight towards me.”
The witness grabbed the gun and opened the front door about the same time and jumped out of the van. He dragged the gun out with him and handed it to another officer who had gotten there. Other officers came up answering a call and took charge of defendant.
Officer Merrow took the stand and related similar patterns of conduct at the scene of the arrest. We will not burden this opinion with further details.
Appellant complains that the trial court erred in refusing her written Charges 1, 2 and 3.
Charge 1 purported to define a deadly weapon. We think there was no error in refusing this charge. The court took judicial knowledge that the twelve gauge pump shotgun loaded with four shells in the tube ready for action and pointed at Officer Mul-lis was a deadly weapon. The jury, in their verdict, determined that the gun was a deadly weapon.
Refused Charge 2 proposed to instruct the jury that the indictment included the lesser offenses of (1) assault and (2) assault and battery.
Requested Charge 3 proposed to instruct the jury that the indictment included the lesser offenses of assault and assault and battery punishable by a fine of up to $500.
We think both of these charges are misleading, confusing, and fail to state correct propositions of applicable law. They were properly refused. Lowe v. State, 54 Ala.App. 280, 307 So.2d 86(1).
However, we think that appellant’s contention that the court should have charged the jury, as the refused Charges 2 and 3 purport to assert, on assault and assault and battery is without merit. We held in Lowe, supra, that where a deadly weapon is used the lesser offenses of assault and of assault and battery are not included and have no application. Here it is without dispute that a deadly weapon was used.
Appellant timely filed a motion (not sworn to) for a new trial on the ground of newly discovered evidence: that defendant was mentally retarded with an intelligence quotient of only 58 “and hence was not able to effectively assist her counsel prior to trial, and she failed to interpose a plea of not guilty by reason of insanity which by virtue of her mental retardation and other factors would have altered the defense of the case.”
Defendant also timely filed a motion (not under oath) for reduction of sentence. She asserts that she had an intelligence quotient of 58 according to a test administered in November 1974. As a result of this test, she was receiving a disability check from the Social Security Administration. The motion avers her mental age to be 10 years and 5 months and that her counsel mistook her mental condition for “simple shyness.”
*353 The trial court timely overruled both motions. So far as the record indicates, the ruling was without a hearing and the ad-duction of evidence. There is no evidence in the record that is addressed to the motions. Under such circumstances, we would be unwilling to hold that the denial of the motions was error.
We add in closing that, in our opinion, the sentence was not excessive.
The judgment is affirmed.
The foregoing opinion was prepared by the Honorable Bowen W. Simmons, a Retired Circuit Judge, serving as a judge of this court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.